Ian MAITLAND, Appellant,

v.

UNIVERSITY OF MINNESOTA; The Regents of the University of Minnesota; Wendell R. Anderson; M. Elizabeth Craig; Jean B. Keffeler; Elton A. Kuderer; H. Bryan Neel; Mary J. Page; Lawrence Perlman; Thomas R. Reagan; David K. Roe; Darrin M. Rosha; Stanley D. Sahlstrom; Ann J. Wynia; Nils Hasselmo, Appellees.

No. 93–3059.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 11, 1994.

Decided Dec. 13, 1994.

Ian Maitland, St. Paul, MN, argued, for appellant.

Julie Sweitzer, Minneapolis, MN, argued (Mark R. Rotenberg, on the brief), for appellee.

Before FAGG, BOWMAN, and LOKEN, Circuit Judges.

BOWMAN, Circuit Judge.

Ian Maitland, a member of the University of Minnesota faculty, has brought an action against the University, its Regents, and various officials (the University), alleging that the defendants discriminated against him on the basis of his sex in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §§ 2000e to 2000e–17 (1988).[1] With-

---

1. Originally, Maitland's complaint consisted of four separate counts. Maitland voluntarily dismissed Counts III and IV, which asserted claims under the Minnesota Constitution and the federal Equal Pay Act, 29 U.S.C. § 206(d) (1988), respectively. In Count II, Maitland alleged a violation of his civil rights under 42 U.S.C. § 1983 (1988). The District Court dismissed Count II without

out reaching the merits of Maitland's Title VII claims, the District Court granted summary judgment in favor of the University, holding that Maitland's action is barred by § 108 of the Civil Rights Act of 1991, 42 U.S.C. § 2000e–2(n) (Supp. V 1993), and "general principles of estoppel." Maitland timely appeals. We reverse and remand for further proceedings.

## I.

In 1980, the University entered into a consent decree to settle a 1973 class action sex discrimination lawsuit brought by female academic employees. *See Rajender v. University of Minn.,* 563 F.Supp. 401, 402–03 (D.Minn.1983) (discussing history of *Rajender* litigation), *rev'd in part and vacated in part,* 730 F.2d 1110 (8th Cir.1984). The *Rajender* consent decree provided that disputes regarding the implementation of the agreement would be referred to special masters for nonbinding arbitration or mediation, but the district court retained the right to approve the settlement of such disputes.

In 1983, several female employees filed petitions under the *Rajender* decree alleging that the University's salary structure discriminated against female academic employees. The district court certified these petitions as a class action, and the University eventually settled the matter with a second consent decree approved by the district court in 1989. *In re Rajender Salary Settlement,* Civ. No. 3–89–464 (D.Minn. Oct. 12, 1989). Maitland was not a party in the *In re Rajender* litigation, and he was not formally notified of the proposed settlement before the court approved it. He nevertheless sought and was granted an opportunity to present objections to the settlement. In its order approving the settlement, the court specifically noted that it had "received, reviewed, and considered" a letter and additional written comments from Maitland and also had considered the comments he made at his personal appearance before the court. *Id.* at 4–5.

Pursuant to this second consent decree, in February 1990 the University began a two-year process of distributing $3,000,000 in salary increases to its female academic employees. The increases were calculated according to a formula specified in the consent decree, and each beneficiary received an increase in salary whether her current salary was lower or higher than the salaries of similarly situated males. Male academic employees were not eligible for these increases.

Maitland filed a complaint with the Equal Employment Opportunity Commission (EEOC) in July 1990, alleging that the University discriminated against him on the basis of his sex when it granted pay increases to its female academic employees pursuant to the terms of the consent decree. The EEOC issued a right-to-sue notice October 15, 1992. Maitland filed his complaint January 11, 1993. The District Court entered summary judgment for the University, holding that Maitland's claims are barred either by the Civil Rights Act of 1991 or by general principles of estoppel. *Maitland v. University of Minn.,* Civ. No. 3–93–91 (D.Minn. July 12, 1993).

## II.

■ We review *de novo* the granting of a summary judgment motion. *Sierra Club v. Robertson,* 28 F.3d 753, 760 (8th Cir.1994). We will affirm the judgment if the record shows there is no genuine issue of material fact and that the prevailing party is entitled to judgment as a matter of law. *Id.; see also* Fed.R.Civ.P. 56(c).

Maitland has not raised any relevant factual disputes that would prevent the entry of summary judgment on the grounds relied upon by the District Court, but he does argue that, as a matter of law, the University is not entitled to summary judgment. Specifically, he contends that the District Court erred in concluding that his cause of action is barred (1) by § 108 of the Civil Rights Act of 1991 and (2) by general principles of estop-

---

prejudice, and Maitland does not appeal that ruling. Thus only Count I, the Title VII count, remains in the case.

pel. We address each of these issues in turn.[2]

### A.

■ We deal first with Maitland's argument that the District Court erred by applying § 108 of the Civil Rights Act of 1991 retroactively to the University's actions taken pursuant to the consent decree at issue in this case. Section 108 provides in relevant part as follows:

(1)(A) Notwithstanding any other provision of law ... an employment practice that implements and is within the scope of a litigated or consent judgment or order that resolves a claim of employment discrimination under the Constitution or Federal civil rights laws may not be challenged
...

(B) ... (i) by a person who, prior to the entry of the judgment or order ... had—

(I) actual notice of the proposed judgment or order sufficient to apprise such person that such judgment or order might adversely affect the interests and legal rights of such person and that an opportunity was available to present objections to such judgment or order by a future date certain; and

(II) a reasonable opportunity to present objections to such judgment or order....

42 U.S.C. § 2000e–2(n)(1) (Supp. V 1993). The Act became effective on the date of its enactment, November 21, 1991. Civil Rights Act of 1991, Pub.L. No. 102–166, § 402(a), 105 Stat. 1071, 1099 (1991). The University

engaged in the allegedly discriminatory acts prior to the effective date of the Act.[3] Unless § 108 applies to causes of action arising prior to its enactment, Maitland's Title VII action is not barred.

■ While the Supreme Court has held that § 101 and § 102 of the Act do not apply retroactively, "there is no special reason to think that all the diverse provisions of the Act must be treated uniformly for such purposes." *Landgraf v. USI Film Prods.,* —— U.S. ——, ——, 114 S.Ct. 1483, 1505, 128 L.Ed.2d 229 (1994). We therefore must consider independently whether § 108 applies retroactively to bar Maitland's Title VII action. The Court's opinion in *Landgraf,* however, provides important guidance for our analysis. *See also Fray v. Omaha World Herald Co.,* 960 F.2d 1370 (8th Cir.1992) (presaging the Court's decision in *Landgraf*).

■ We must determine first whether the statute evinces any clear expression of congressional intent on the application of the statute to cases arising before its enactment. *Landgraf,* —— U.S. at ——, 114 S.Ct. at 1492; *Fray,* 960 F.2d at 1375. If the statute clearly reveals Congress's intent that the statute is to apply retroactively, we will give effect to that intent unless such an application would violate the Constitution. If we cannot find any clear congressional intent, we must consider whether the new statute would have a true retroactive effect,[4] *i.e.,* "whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf,* —— U.S. at ——, 114 S.Ct. at

---

**2.** Maitland also raises a due-process argument. *See infra* part III.

**3.** The University argues that the application of § 108 in this case is not even arguably retroactive because Maitland filed his complaint after the effective date of the Act so that § 108 was the law at the time the lawsuit was initiated. We are not persuaded by the University's argument. The date of filing is irrelevant; the date of "the events in suit," *Landgraf v. USI Film Prods.,* —— U.S. ——, ——, 114 S.Ct. 1483, 1505, 128 L.Ed.2d 229 (1994), determines whether a court must consider a statute's potential retroactive effect.

**4.** A "true retroactive effect" is what the Supreme Court referred to as a "truly 'retrospective' application of a statute." *Landgraf,* —— U.S. at ——, 114 S.Ct. at 1504. Quoting Circuit Justice Story, the Court noted its agreement with his statement that "every statute, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective...." *Id.* at ——, 114 S.Ct. at 1499 (quoting *Society for the Propagation of the Gospel v. Wheeler,* 22 F.Cas. 756, 767 (C.C.D.N.H.1814) (No. 13,156) (citing *Calder v. Bull,* 3 U.S. (3 Dall.) 386, 1 L.Ed. 648 (1798))).

1505. If we find that the statute would have a true retroactive effect, the "traditional presumption teaches that it does not govern" in cases that arose before the statute became effective. *Id.* at ——, 114 S.Ct. at 1505; *see also Fray,* 960 F.2d at 1374 ("Retroactivity is not favored in the law.") (quoting *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988)).

We cannot find, and the University does not direct our attention to, any evidence of "clear congressional intent" regarding whether § 108 should apply to cases arising before its enactment. The Supreme Court's analysis in *Landgraf* of the Civil Rights Act of 1991 and its legislative history is largely dispositive. —— U.S. at ——–——, 114 S.Ct. at 1489–96. As the Court noted, the only sections of the Act that address its effective date are § 402(a) and (b), and § 109(c), and the Court was not able to decide on the basis of these sections alone whether Congress intended § 102 to apply retroactively. Having analyzed the entire Civil Rights Act of 1991, the Court concluded that the Act contained no "unambiguous directive" at to § 102. *Id.* at ——, 114 S.Ct. at 1496. The same is true for § 108.

▮▮▮ Section 108 is designed to overrule by act of Congress some aspects of the Supreme Court's decision in *Martin v. Wilks,* 490 U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989).[5] But "[e]ven when Congress intends to supersede a rule of law embodied in" a Supreme Court decision "with what it views as a better rule established in earlier decisions, its intent to reach conduct preceding the 'corrective' amendment must clearly appear." *Rivers v. Roadway Express, Inc.,* —— U.S. ——, ——, 114 S.Ct. 1510, 1519, 128 L.Ed.2d 274 (1994); *see also Fray,* 960 F.2d at 1377. A corrective intent is not sufficient to satisfy the clear congressional intent test described in *Landgraf.*

Because we are unable to find any evidence of clear congressional intent to make § 108 applicable to cases arising before its enactment, the traditional presumption against the retroactive application of statutes comes into play. We therefore must decide

whether § 108, if applied to cases arising before its enactment, would have a true retroactive effect. Such a retroactive effect would bring § 108 "within the class of laws that are presumptively prospective." *Rivers,* —— U.S. at ——, 114 S.Ct. at 1515 (1994).

▮▮▮ "A statute does not operate retrospectively merely because it is applied in a case arising from conduct antedating the statute's enactment or upsets expectations based in prior law." *Landgraf,* —— U.S. at ——, 114 S.Ct. at 1499 (citation omitted). The relevant question is whether the statute "attaches new legal consequences to events completed before its enactment," and to answer that question requires consideration of "the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event." *Id.* On this issue "judges tend to have 'sound ... instinct[s],' and familiar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance." *Id.* (citation omitted).

In this case, the University argues that § 108 is procedural in nature and, as such, would not have a true retroactive effect. Substantive changes, according to the University, are "those which make illegal conduct which was legal before the change in the law." Appellees' Brief at 9. We think the University defines a substantive change too narrowly and in a manner inconsistent with the Supreme Court's definition of true retroactive effect as set out in *Landgraf.*

▮▮▮ Applying the *Landgraf* definition, we conclude that § 108 would "impair rights a party possessed when he acted," *Landgraf,* —— U.S. at ——, 114 S.Ct. at 1505, and that it "attaches new legal consequences to events completed before its enactment," *id.* at ——, 114 S.Ct. at 1499. At the time of the events at issue, the law did not even hint that Maitland's participation in the consent decree hearings would jeopardize his cause of action. Quite to the contrary, *Martin v. Wilks,* discussed below, was then the law of the land. Simply put, Maitland's Title VII claim would appear to be barred under the 1991 Act but clearly can be maintained under *Martin,* the

---

**5.** *See Landgraf,* —— U.S. at —— n. 8, 114 S.Ct. at    1492 n. 8.

decision that § 108 effectively overturns. *Cf. Fray,* 960 F.2d at 1373 (analyzing the retroactive effect of § 101 of the 1991 Act and stating that Fray's § 1981 claims, maintainable under the Act, would be barred under *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), the decision that § 101 effectively overturns).

In *Martin,* the Supreme Court held that "[a] voluntary settlement in the form of a consent decree between one group of employees and their employer cannot possibly 'settle,' voluntarily or otherwise, the conflicting claims of another group of employees who do not join in the agreement." 490 U.S. at 768, 109 S.Ct. at 2188. The Court went on to note that this rule applies even to parties to the lawsuit who choose not to settle: "A court's approval of a consent decree between some of the parties therefore cannot dispose of the valid claims of nonconsenting intervenors." *Id.* (quoting *Local No. 93, Int'l Assn. of Firefighters v. City of Cleveland,* 478 U.S. 501, 529, 106 S.Ct. 3063, 3079, 92 L.Ed.2d 405 (1986)).

Maitland argues that he reasonably relied on *Martin,*[6] as well as earlier decisions of this Court and other circuits consistent with the reasoning of *Martin,*[7] when he did not seek to do more to protect his interests in the *In re Rajender* litigation. We find his argument persuasive. Had Maitland known that the law would change and that he might be barred by subsequent legislation from bringing a lawsuit to challenge actions taken under the consent decree, it is probable that he would have taken a much more active role in the *Rajender* case. By seeking to apply § 108 to bar Maitland's cause of action, the University is attempting to attach "new legal consequences" to Maitland's limited participation in the consent decree proceedings, conduct that was completed well before the effective date of the statute. We therefore hold that § 108 has a true retroactive effect.

■ Having held that § 108 has a true retroactive effect in this case, we apply the Supreme Court's "traditional presumption" against retroactive application of a statute and hold that § 108 "does not govern" in cases that arose before the statute became effective. *Landgraf,* —— U.S. at ——, 114 S.Ct. at 1505. As Maitland's Title VII claims arose before the effective date of the statute, the claims are not barred by § 108.[8]

#### B.

■ The District Court held that, even if § 108 does not apply to bar Maitland's claim, "[u]nder general principles of estoppel, in furtherance of the interest of finality and to protect the settled expectations of the parties to the consent decree and actions taken in reliance on the prior judgment of this court," Maitland's limited participation in the consent decree proceedings estops him from pursuing his Title VII action. *See Maitland,* Civ. No. 3–93–91, order at 3–4 (D.Minn. July 12, 1993). Maitland argues that the District Court erred in concluding that he is estopped from pursuing his Title VII claims. We agree.

■ The District Court cited no authority for its holding, and the University has provided us with none. The phrase "general principles of estoppel" is vague at best. There are a number of different types of estoppel doctrines: estoppel by record, estoppel by deed, collateral estoppel, estoppel *in pais* (equitable estoppel), promissory estoppel, and judicial estoppel. Estoppel by deed and estoppel by record are sometimes referred to as "technical estoppels" because their rules apply with certainty in appropriate cases. Neither doctrine applies in this

---

6. *Martin v. Wilks* was decided June 12, 1989. Maitland sent letters to the district court opposing the consent decree and appeared before the court in October 1989. The district court approved the consent decree October 12, 1989.

7. *See Ward v. Arkansas State Police,* 653 F.2d 346, 348–49 (8th Cir.1981); *see also United States v. City of Chicago,* 870 F.2d 1256, 1262 (7th Cir.1989); *In re Birmingham Reverse Discrimination Employment Litig.,* 833 F.2d 1492,

1498 (11th Cir.1987), *aff'd sub nom. Martin v. Wilks,* 490 U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989).

8. Our holding makes it unnecessary to address Maitland's contention that, even if § 108 applies to his action, he did not receive notice of and was not given a reasonable opportunity to make objections to the consent decree as required by § 108.

case. Under the other estoppel doctrines, the party who is to be estopped, or one in privity with that party, must have asserted a fact or claim, or made a promise, that another party relied on, that a court relied on, or that a court adjudicated. *See generally* 28 Am.Jur.2d *Estoppel & Waiver* §§ 2, 35, 48, 71 (1966 & Supp.1994); *see also Farmland Indus., Inc. v. Morrison–Quirk Grain Corp.,* 987 F.2d 1335, 1339 (8th Cir.1993) (stating elements of collateral estoppel). Maitland has made no assertions or promises on which another party or a court has relied and which he now seeks to repudiate, and no court has adjudicated the merits of his Title VII claims. It is hard to understand how any of these estoppel doctrines could bar his claim.

■ In relying on "general principles of estoppel," the University fails to recognize that estoppel is an equitable doctrine, and it should not be given effect beyond what is necessary to accomplish justice between the parties. *See Dickerson v. Colgrove,* 100 U.S. 578, 580–81, 25 L.Ed. 618 (1880). Nothing in Maitland's limited participation in the consent decree proceedings suggests that it would be inequitable or unjust to allow Maitland to pursue his Title VII claims.

Moreover, the Supreme Court in *Martin v. Wilks* squarely held that a voluntary settlement cannot cut off the conflicting claims of persons who do not join in the settlement. Under *Martin,* which was the law of the land at the time of the operative events in the present case, Maitland had the right to challenge actions taken pursuant to the consent decree in a separate action regardless of any notice of or opportunity to participate in the proceedings that led to judicial approval of the settlement. *See supra* at 362–63; *Martin,* 490 U.S. at 768, 109 S.Ct. at 2187–88. We therefore cannot agree that the "settled expectations of the parties" to the consent decree will be disrupted by the litigation of Maitland's claims. To the contrary, at the time the consent decree was entered it was readily foreseeable that the decree might precipitate sex discrimination claims by Maitland or other male academic employees of the University. We therefore reject the University's position that he is estopped from obtaining adjudication of those claims by rea-son of his limited participation in the consent decree proceedings.

### III.

Our disposition of the case makes it unnecessary for us to address Maitland's constitutional argument that to bar his challenge to actions taken under the consent decree would violate his right to due process. For the reasons stated, the District Court's entry of summary judgment for the University is reversed and the case is remanded for further proceedings.