UNITED STATES of America, Plaintiff,

v.

Charles HACKER, Dakota Machinery Exchange, Inc., F. Butch Oseby, Roger J. Raether, Donald L. Jerke, Defendants.

Civ. No. 94–10014.

United States District Court,
D. South Dakota,
Northern Division.

Dec. 23, 1994.

---

Ted L. McBride, U.S. Atty's Office, Rapid City, SD, for plaintiff.

Gary L. Gellhaus, Aberdeen, SD, for defendant Charles Hacker.

Scott N. Heidepriem, Johnson, Heidepriem, Miner & Marlow, Sioux Falls, SD, for defendant Dakota Machinery.

David R. Gienapp, Arneson, Issenhuth, Gienapp & Blair, Madison, SD, for defendant F. Butch Oseby.

Frank E. Denholm, Denholm, Glover & Britzman, Brookings, SD, for defendant Roger J. Raether.

Michael B. Thompson, Daniel P. Johnson, Sioux Falls, SD, for defendant Donald L. Jerke.

James E. McMahon, Boyce, Murphy, McDowell & Greenfield, Sioux Falls, SD, for defendant Russell Hawkins.

## MEMORANDUM OPINION

PIERSOL, District Judge.

Defendant Charles Hacker moves to dismiss Counts 1 and 4 of the Second Superseding Indictment, and the remaining defendants jointly move to dismiss Counts 1, 2, 7, and 8 of the Second Superseding Indictment. All defendants argue that the Sisseton–Wahpeton Sioux Tribe and other Indian tribes mentioned in the Second Superseding Indictment legally obtained title to federal excess property under the Indian Self–Determination Act, as amended by Congress in 1988 through passage of Public Law 100–472 and codified at 25 U.S.C. § 450j(a). Defendants argue that, as agents of the tribes, they legally sold the property to third parties. Thus, defendants claim that no crimes have occurred and Counts 1, 2, 4, 7, and 8 should be dismissed. Having carefully considered the motions, briefs, arguments, and evidence presented by the defendants and the government, the Court denies the motions to dismiss.

### I. Arguments

Defendants acknowledge that the federal excess property program is generally governed by the Federal Property Management statutes found in Titles 40 and 41 of the U.S.Code, and in the implementing regulations found at 41 C.F.R. § 101–43 *et seq.* They contend, however, that Congress exempted Indian tribes and tribal organizations from compliance with these statutes and regulations by amending the Indian Self–Determination Act, 25 U.S.C. § 450j(a) in 1988 to read as follows:

**(a) Applicability of Federal contracting laws and regulations; waiver of requirements**

Contracts with tribal organizations pursuant to section 450f of this title shall be in accordance with all Federal contracting laws and regulations except that, in the discretion of the appropriate Secretary, such contracts may be negotiated without advertising and need not conform with the provisions of sections 270a to 270d of Title 40: *Provided,* that the appropriate Secretary may waive any provisions of such contracting laws or regulations which he

determines are not appropriate for the purposes of the contract involved or inconsistent with the provisions of this Act: *Provided further,* That, except for construction contracts (or sub-contracts of such a construction contract), the Office of Federal Procurement Policy Act (88 Stat. 796; 41 U.S.C. 401 et seq.) and Federal acquisition regulations promulgated thereunder shall not apply to self-determination contracts.

Defendants also rely upon 25 U.S.C. § 450j(f), as amended in 1988, which provided in pertinent part:

**(f) Use of existing school buildings, hospitals, and other facilities and equipment therein; acquisition and donation of excess or surplus Government personal property**

In connection with any self-determination contract or grant made pursuant to section 450f or 450h of this title, the appropriate Secretary may—

\* \* \* \* \* \*

(2) donate to an Indian tribe or tribal organization the title to any personal or real property found to be excess to the needs of the Bureau of Indian Affairs, the Indian Health Service, or the General Services Administration, including property and equipment purchased with funds under any self-determination contract or grant agreement; and

(3) acquire excess or surplus Government personal or real property for donation to an Indian tribe or tribal organization if the Secretary determines the property is appropriate for use by the tribe or tribal organization for a purpose for which a self-determination contract or grant agreement is authorized under this Act.

Defendants contend that Congress gave the tribes access to the federal excess personal property system by revising this provision to allow donation of excess federal personal property to the tribes. Under either subsection (2) or (3), defendants argue that donation and transfer of title to the property occurred upon the decision to donate the property by the appropriate Secretary. Defendants assert that the Bureau of Indian Affairs (BIA) acted on behalf of the Secretary of the Department of Interior. Defendants argue that, because the General Services Administration (GSA) regulations do not apply to the tribes and because the BIA did not adopt new regulations after Congress amended the statute, internal BIA documents are the best evidence of government policy. Defendants rely upon a September 10, 1990 memorandum written by the Deputy to the Assistant Secretary for Indian Affairs to all area BIA directors. (Doc. 121, Ex. G.) In the memorandum, the official stated that donated property would pass to the tribes in "as is" condition, tribes would pay transportation costs, title would pass from the government to the tribes, and the tribes would have responsibility for maintenance costs.

The government argues that defendants completely misapprehend the charges brought against them. The government contends that defendants' arguments might be relevant if defendants were charged with theft of government property, but they are not. Defendants are charged in Count 1 with conspiracy to make false statements to GSA in violation of 18 U.S.C. § 1001, conspiracy to misapply tribal funds in violation of 18 U.S.C. § 666, and conspiracy to knowingly and willfully convert the funds of an Indian tribal organization in violation of 18 U.S.C. § 1163. In the remaining counts of the Second Superseding Indictment, individual defendants are charged with direct violations of these and other statutes, and none of the charges depend upon the correctness of defendants' view as to the applicability of the Indian Self–Determination Act to acquisition of federal surplus property. The government argues that defendants are criminally charged because, after April 1992, Defendants knew that GSA would not release excess federal property through the screening process if the property was intended for sale by Dakota Machinery Exchange, Inc. (DME). The government goes on to argue that, after April 1992, defendants made statements intended to lead GSA officials to believe that the property they requested was for actual use on specified Indian self-determination (638) contracts when in fact the

property was not for use on Indian self-determination contracts.

The government asserts that 25 U.S.C. § 450j(a) exempted tribes only from compliance with the acquisition and procurement regulations promulgated under 41 U.S.C. § 401 *et seq.*, not from compliance with federal property utilization regulations promulgated under Title 40 of the U.S.Code. Additionally, the government argues that section 450j(a) must be read together with section 450j(f), which requires that excess federal property must be used in connection with an Indian self-determination contract. The government argues that section 450j(f) makes clear that the Secretary of the Department of Interior must determine the property is appropriate for use by the tribe on a self-determination contract, and this requirement eviscerates any argument that the tribes could sell the property. Finally, the government argues that defendants' arguments do not apply at all to Counts 7 and 8, which involve charges against defendants Butch Oseby and DME for converting tribal funds.

## II. Discussion

■ The disposition of surplus government property is generally governed by 40 U.S.C. § 484(c), which provides:

**(c) Method of disposition**

Any executive agency designated or authorized by the Administrator [of the General Services Administration] to dispose of surplus property may do so by sale, exchange, lease, permit, or transfer, for cash, credit, or other property, with or without warranty, and upon such other terms and conditions as the Administrator deems proper, and it may execute such documents for the transfer of title or other interest in property and take such other action as it deems necessary or proper to dispose of such property under the provisions of this subchapter.

"This statute confers paramount authority," *United States v. 434.00 Acres of Land,* 792 F.2d 1006, 1009 n. 4 (11th Cir.1986), "and shall not be subject to the provisions of any law inconsistent [with it], except as otherwise provided by the Office of Federal Procurement Policy Act [41 U.S.C.A. § 401 et seq.]," and one other limited exception listed in the

statute. 40 U.S.C. § 474. GSA regulations, promulgated under the authority of Title 40 of the U.S.Code and from which the tribes were not exempted under section 450j(a), provide that property declared as surplus may be transferred between agencies for use before GSA will attempt to sell the property. 41 C.F.R. § 101–43.309–1. The regulations also set out the process by which the Standard Form 122, Transfer Order Excess Personal Property, is used to effectuate such a transfer of property. 41 C.F.R. § 101–43.309–5(a). "All transfers of excess personal property between Federal agencies shall be by SF 122[.]" *Id.* All SF 122 "transfer orders shall be executed by an accountable Federal official, and will not be approved by GSA unless so executed." 41 C.F.R. § 101–43.309–5(c). The regulations also provide that "[p]roperty determined to be surplus . . . shall be held available for donation program screening in accordance with part 101–44 before it shall be assigned for sale, abandonment, or destruction in accordance with part ·101–45." 41 C.F.R. § 101–43.311–3. "All proceeds . . . from any transfer of excess property to a Federal agency for its use, or from any sale, lease, or other disposition of surplus property, shall be covered into the Treasury as miscellaneous receipts, except as" to certain exceptions not applicable here. 40 U.S.C. § 485. Defendants do not dispute that they used the SF 122s and GSA screening procedure to obtain the excess federal property.

■ The Department of Interior also promulgated regulations under the authority of Title 40 of the U.S.Code. 41 C.F.R. Part 114–43. These regulations apply to all personal property with the exception of automatic data processing equipment and supplies and books and related material. 41 C.F.R. § 114–43.000. "Available personal property means any personal property that is no longer needed by the holding activity, and is available for use by other Interior activities." 41 C.F.R. § 114–43.001–50. Only personal property that "is not reportable to GSA as excess . . . shall be reported to the appropriate GSA regional office *for donation* or sale." 41 C.F.R. § 114–43.306 (emphasis added). Such property would be like that referred to

in the October 1990 memorandum of the Chief, Division of Property Management of the Bureau of Indian Affairs, Department of the Interior to the Area Property Management Officers. (Doc. 121, Ex. H.) "Reportable personal property means any personal property that has been determined to be excess to the needs of the Department of the Interior and is required to be reported to the General Services Administration." 41 C.F.R. § 114–43.001–51. Such reportable personal property was obtained by defendants as "screeners" for the tribes by use of the SF 122 screening procedure set out in GSA regulations.

■ A Department of Interior regulation, 41 C.F.R. § 114–43.301 **Federal Government procedure** (emphasis added), provides:

The objective of the policy that excess property is the first source of supply is to obtain effective and economical utilization of property already owned by the Federal Government. Effective and economical utilization can be determined only through evaluation of use and costs, *and excess property may be acquired only when there is such an evaluation and:*

(a) *The property is needed to meet the known requirements of an authorized planned program;* and

(b) Funds are available for the costs of acquisition and for the costs of repair or modification needed to comply with the minimum standards established by the Occupational Safety and Health Act of 1970 (84 Stat. 1590), as amended.

Additionally, Department of Interior regulation 41 C.F.R. § 114–43.301–50 (emphasis added) provides:

The head of each bureau and office is responsible for establishing procedures to ensure that excess property is not acquired unless there has been a determination that such acquisition is practicable and economically feasible. Such a determination requires consideration of the costs involved, including the costs of transportation, handling, and storage. *When the proposed acquisition involves any type of machinery or equipment,* consideration shall also be given to the following factors:

*(a) The duration of the program and the frequency of use to determine any economic advantage of ownership versus loan or rental;* and

(b) The nature of any repairs, modifications, and additional accessorial equipment required to bring the item up to the minimum standards of the Occupational Health and Safety Act, and the total costs involved.

The Department of Interior's regulation on Contractor Inventory provides that, before a contractor (which would include a tribe executing a self-determination contract) "is authorized to . . . dispose of contractor inventory[,]" the property must be (1) determined excess to the Department of the Interior; (2) determined as "surplus to all Federal agency needs"; and (3) the contractor must dispose of the property through competitive bidding and credit the proceeds to the United States. 41 C.F.R. § 114–43.316. All of these regulations, along with 25 U.S.C. § 450j(f), as amended in 1988, support the government's position that excess federal property could be screened only for use on Indian self-determination contracts and could not be sold by the tribes.

■ The Court acknowledges defendants' argument that Congress amended 25 U.S.C. § 450j effective October 25, 1994. The Court has carefully reviewed the amended statute and its legislative history. S.Rep. 103–374, 103rd Cong., 2nd Sess.1994, 1994 WL 530979. The Court finds that the recent amendments to 25 U.S.C. § 450j operate prospectively only and have no application to the facts which support the Second Superseding Indictment. *See Landgraf v. USI Film Products*, —— U.S. ——, ——, 114 S.Ct. 1483, 1505, 128 L.Ed.2d 229 (1994); *Maitland v. University of Minnesota*, 43 F.3d 357 (8th Cir.1994). In so finding, the Court is left with little doubt in reading the recent legislative history that Congress intended, through the 1988 amendments to the Indian Self–Determination Act, to lessen the regulatory requirements that Indian tribes and tribal organizations must meet to *obtain* excess federal property for use on Indian self-determination contracts. As explained above, however, the Court concludes as a

matter of law that the tribes did not receive authority to *sell* excess federal property by obtaining that property through the GSA screening procedure. Accordingly,

IT IS ORDERED that defendants' motions to dismiss Counts 1, 2, 4, 7, and 8 of the Second Superseding Indictment are denied because the allegations as stated do constitute crimes. (Docs. 12, 129.)

IT IS FURTHER ORDERED that defendants' alternative motion in limine is also denied, as the basis advanced by defendants does not support granting the motion, even though portions of the motion may be sustainable on other grounds; the denial is without prejudice to defendants' right to reassert the motion raising other grounds in support. (Doc. 120.)