# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2192

_____

| | | |
|---|---|---|
| Ian Maitland, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| University of Minnesota; Regents of | * | |
| the University of Minnesota; | * | |
| Wendell R. Anderson; M. Elizabeth | * | Appeal from the United States |
| Craig; Jean B. Keffeler; Elton A. | * | District Court for the |
| Kuderer; H. Bryan Neel, III; Mary J. | * | District of Minnesota. |
| Page; Lawrence Perlman; Thomas R. | * | |
| Reagan; David K. Roe; Darrin M. | * | |
| Rosha; Stanley D. Sahlstrom; Ann J. | * | |
| Wynia; Julie Bleyhl; William E. | * | |
| Hogan, II; Hyon T. Kim; William R. | * | |
| Peterson; Nils Hasselmo, University | * | |
| of Minnesota President, | * | |
| | * | |
| Appellants. | * | |

_____

Submitted:  June 15, 2001
Filed: August 15, 2001

_____

Before WOLLMAN, Chief Judge, MAGILL, and BOWMAN, Circuit Judges.

_____

BOWMAN, Circuit Judge.

This case is making its third appearance in this Court, having been twice dismissed and revived on appeal. In this latest interlocutory appeal, the University of Minnesota (the "University"), the members of the Board of Regents, and the President of the University (the "individual defendants"), appeal the District Court's[1] denial of the defendants' motion to dismiss or, in the alternative, for partial summary judgment based on Eleventh Amendment immunity and absolute legislative immunity. We affirm.

I.

The origins of this case go back to 1973, when female faculty members brought a class action suit against the University of Minnesota alleging sexual discrimination in compensation. In 1980, the University settled with the class by entering into a consent decree. Rajender v. Univ. of Minn., 563 F. Supp. 401, (D. Minn. 1983) (Rajender I), rev'd in part and vacated in part, 730 F.2d 1110 (8th Cir. 1984). In 1983, several female faculty members filed petitions under the consent decree that alleged continuing discrimination in compensation by the University. The court again certified the female faculty members as a class and, in 1989, settled the matter with a second consent decree. In re Rajender Salary Settlement, Civ. No. 3-89-464 (D. Minn. Oct. 12, 1989) (Rajender II). Rajender II provided for an adjustment whereby $3 million would be distributed to female faculty members in the form of salary increases.

Ian Maitland, a male professor at the University of Minnesota, sued the University and other officials in 1993 under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e to 2000e-17 (1994 & Supp. IV 1998), claiming that the Rajender II salary increases for female faculty members had created a discriminatory pay structure tilted against himself and other male faculty members. The District Court

---

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

granted summary judgment to the University after concluding that Maitland's claims were barred by the Civil Rights Act of 1991 and under principles of estoppel. Maitland v. Univ. of Minn., Civ. No. 3-93-91 (D. Minn. July 12, 1993). We reversed the District Court on both grounds. Maitland v. Univ. of Minn., 43 F.3d 357 (8th Cir. 1994) (Maitland I).

On remand, Maitland asserted an additional claim for damages under section 102(a) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a (1994), and reasserted a 42 U.S.C. § 1983 claim (which had previously been dismissed) that alleged the University had violated his equal protection rights. In 1996, the District Court granted summary judgment to the University, finding that Maitland was ineligible to recover under his section 102(a) damages claim, that the individual defendants were entitled to qualified immunity, and that the University and the individual defendants were entitled to judgment as a matter of law on the remaining claims. Maitland v. Univ. of Minn., Civ. No. 4-93-25 (D. Minn. Dec. 6, 1996). Again, we reversed. See Maitland v. Univ. of Minn., 155 F.3d 1013, 1019 (8th Cir. 1998) (Maitland II).[2]

On remand, the University filed a motion to dismiss or, in the alternative, for partial summary judgment on four different grounds. First, the individual defendants argued that they had absolute legislative immunity when they approved the Rajender II settlement, thereby barring Maitland's § 1983 claim against them. Second, the defendants argued that Congress exceeded its constitutional authority under Section 5 of the Fourteenth Amendment when it abrogated the University's Eleventh Amendment immunity with respect to Title VII sex-discrimination claims brought by men. Third, the defendants argued that recent changes to Maitland's salary have rendered his back-pay and injunctive-relief claims moot. Finally, the defendants argued that Maitland

---

[2]For a more detailed account of the litigation through Maitland II, see Maitland v. Univ. of Minn., 43 F.3d 357 (8th Cir. 1994) (Maitland I) and Maitland v. Univ. of Minn., 155 F.3d 1013 (8th Cir. 1998) (Maitland II).

failed to join indispensable parties, i.e., members of the <u>Rajender II</u> class from whom the defendants contended Maitland was seeking divestiture relief.  The District Court[3] denied the motion on all four grounds.  <u>Maitland v. Univ. of Minn.</u>, Civ. No. 4-93-25 (D. Minn. Mar. 29, 2000).  The defendants bring this interlocutory appeal challenging the District Court's rulings on the legislative-immunity and Eleventh Amendment issues.

II.

We have jurisdiction over this interlocutory appeal under the collateral-order doctrine.  <u>See</u> <u>Cohen v. Beneficial Indus. Loan Corp.</u>, 337 U.S. 541, 545-47 (1949); <u>see, e.g.</u>, <u>Powell v. Ridge</u>, 247 F.3d 520, 524 (3d Cir. 2001) ("[O]rders denying legislative immunity have often been reviewed under the collateral order doctrine."), <u>petition for cert. filed</u>, 69 U.S.L.W. 3791 (U.S. June 12, 2001) (No. 00-1854); <u>Murphy v. Ark.</u>, 127 F.3d 750, 753-54 (8th Cir. 1997) (noting that an order denying a claim of Eleventh Amendment immunity is properly appealable as a collateral order).  We review de novo a district court's disposition of a motion to dismiss.  <u>Hafley v. Lohman</u>, 90 F.3d 264, 266 (8th Cir. 1996), <u>cert. denied</u>, 519 U.S. 1149 (1997).

A.

The defendants first argue that the District Court erred by denying the individual defendants legislative immunity from Maitland's § 1983 claim against them in their individual capacities.  Maitland based his claim upon their approval of the <u>Rajender II</u> consent decree and the discrimination that Maitland claims he suffered as a result of the implementation of that decree.  The individual defendants contend that they are immune from suit because the Regents were elected to their position by the Minnesota state

---

[3]The case was assigned to Judge Frank for the first time after our remand in <u>Maitland II</u>.

legislature and were performing a legislative function when they entered into the consent decree.[4]

We conclude that the District Court properly denied the defendants' legislative-immunity claim on the basis of our decision in Stanley v. Magrath, 719 F.2d 279 (8th Cir. 1983). In Stanley, students at the University of Minnesota brought a § 1983 claim against members of the Board of Regents following the Regents' decision to permit students to obtain a refund of a compulsory fee used to support the University newspaper following an outcry over an especially controversial issue of the newspaper. Students affiliated with the newspaper argued that the Regents' decision to refund monies based upon the content of the newspaper violated the First Amendment. We held, inter alia, that members of the Board of Regents were not entitled to legislative immunity:

> The Regents do not qualify as legislators within the meaning of the legislative-immunity doctrine. Although the Regents are given the power "to enact laws for the government of the university" they are essentially administrators who oversee the operation of a state educational institution. . . .
>
> There are instances in which the members of bodies other than state legislatures may have legislative immunity from suit under § 1983. The governing body of a state-supported institution of higher learning, we think, cannot qualify for such protection.

Id. at 284-85 (citations omitted). The defendants recognize our decision in Stanley, but argue that the Supreme Court's subsequent decision in Bogan v. Scott-Harris, 523 U.S. 44 (1998), suggests that Stanley was wrongly decided and they urge us to revisit the issue. We decline to do so.

---

[4]The President of the University is elected by the Regents and, in addition to other responsibilities, serves as President of the Board of Regents.

In Bogan, the Supreme Court held that local legislators, like their federal, state and regional counterparts, were protected by absolute legislative immunity for their legislative activities. 523 U.S. at 46, 54. The Court went on to find that "[a]bsolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity,'" and that "[w]hether an act is legislative turns on the nature of the act." Id. at 54 (quoting Tenney v. Brandhove, 341 U.S. 367, 376 (1951)). We find, however, that Bogan fails to illuminate the issue here and does not require us to rethink our holding in Stanley. Because Bogan does not undercut Stanley, our well-established rule that "one panel [of this Court] is not at liberty to overrule a decision of another panel" governs and we are bound by our holding in Stanley. United States v. Prior, 107 F.3d 654, 660 (8th Cir.), cert. denied, 522 U.S. 824 (1997). Accordingly, the individual defendants are not immune from Maitland's § 1983 claim under the doctrine of legislative immunity.

B.

The defendants next argue that the District Court erred by denying Eleventh Amendment immunity to the University on Maitland's Title VII claim. Specifically, the defendants argue that Congress exceeded its constitutional authority under Section 5 of the Fourteenth Amendment when it abrogated the University's Eleventh Amendment immunity with respect to Title VII sex-discrimination claims brought by men. The defendants argue that there was no factual basis for Congress to subject the States to sex-discrimination claims by men, and that Title VII, as applied to men, is not a carefully delimited, proportional, and congruent remedy for unconstitutional conduct by the States.

The defendants first contend that the District Court erred by relying on Fitzpatrick v. Bitzer, 427 U.S. 445 (1976), wherein the Supreme Court rejected an Eleventh Amendment challenge to a Title VII sex-discrimination claim brought by male employees. The District Court, relying on Fitzpatrick, held that Maitland's Title VII

claim was neither barred by the Eleventh Amendment nor beyond Congress's legislative power under Section 5 of the Fourteenth Amendment. Maitland, Civ. No. 4-93-25 at 8-9. The defendants argue that Fitzpatrick does not control because the question at issue here—whether Title VII sex-discrimination claims brought by males are beyond Congress's power under Section 5 of the Fourteenth Amendment—was never directly before the Court in Fitzpatrick. Rather, the defendants argue, the Court in Fitzpatrick treated the issue of whether Section 5 of the Fourteenth Amendment could constitutionally support a Title VII sex-discrimination claim brought by a male employee as an ancillary antecedent proposition that was assumed, but not decided, by the Court.

In Fitzpatrick, current and retired male employees of the State of Connecticut brought a Title VII claim against the State, arguing that the State's retirement benefit program discriminated against them because of their sex. The district court held that the program violated Title VII and granted injunctive relief, but held that retrospective retirement benefits and attorney fees were prohibited under Edelman v. Jordan, 415 U.S. 651 (1974). The Second Circuit upheld the district court with respect to the retrospective retirement benefits, but reversed as to attorney fees. The Supreme Court granted certiorari to resolve "whether, as against the shield of sovereign immunity afforded the State by the Eleventh Amendment, Congress has the power to authorize federal courts to enter such a [monetary] award against the State as a means of enforcing the substantive guarantees of the Fourteenth Amendment." Fitzpatrick, 427 U.S. at 448 (citation omitted). The Court ultimately concluded that the State's Eleventh Amendment immunity was abrogated by Title VII, which was enacted under Section 5 of the Fourteenth Amendment, and that the male employees were permitted to recover their retrospective retirement benefits from the State. See id. at 456.

The defendants rely heavily on footnote eleven of Fitzpatrick, where the Court states that "[a]part from their claim that the Eleventh Amendment bars enforcement of the remedy established by Title VII in this case, respondent state officials do not

contend that the substantive provisions of Title VII as applied here are not a proper exercise of congressional authority under § 5 of the Fourteenth Amendment." 427 U.S. at 456 n.11.  The defendants urge us to interpret this footnote to mean that the Court assumed, but did not answer, the issue of whether Congress created Title VII claims for men consistent with Section 5 of the Fourteenth Amendment.  We agree with the defendants that Fitzpatrick did not squarely decide the issue, but we believe that Fitzpatrick is highly persuasive authority for the proposition that Title VII sex-discrimination claims brought in federal court by male employees against a state are not barred by the Eleventh Amendment.  Cf. Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 82 (1998) (permitting male employee to sue employer for discrimination under Title VII); Newport News Shipbldg. & Dry Dock Co. v. EEOC, 462 U.S. 669, 682 (1983) (finding that, under Title VII, "[m]ale as well as female employees are protected against discrimination").

The defendants argue that, because Fitzpatrick is not controlling, Maitland's Title VII claim is unconstitutional under the more recent test for challenges to legislation enacted under Section 5 of the Fourteenth Amendment.  Specifically, the defendants contend that Congress failed to identify a history and pattern of unconstitutional employment discrimination by the State against men when it enacted and amended Title VII, and that the rights and remedies created by Title VII are not "congruent and proportional" to that pattern of discrimination.  Bd. of Trs. of Univ. of Ala. v. Garrett, 121 S. Ct. 955, 964, 966 (2000); see also City of Boerne v. Flores, 521 U.S. 507, 520 (1997).  Accordingly, the defendants argue, Title VII claims brought by men do not abrogate the State's Eleventh Amendment immunity.

We recently held in Okruhlik v. United States, Nos. 00-3159, 00-3460, 00-3896, 2001 WL 686995 (8th Cir. June 20, 2001), that Title VII sex-discrimination claims against state employers are not barred by the Eleventh Amendment.  Okruhlik was the result of a consolidation of three separate interlocutory appeals that raised the same issue—whether professors and staff at the University of Arkansas may maintain claims

against University of Arkansas trustees and other state officials for sex and race discrimination and harassment under Title VII. We held that Congress's enactment of, and amendments to, Title VII validly abrogated the States' Eleventh Amendment immunity. Most importantly for our purposes here, we held that in enacting and amending Title VII, "Congress expressed its unequivocal intent to abrogate immunity and acted pursuant to its constitutional authority" under Section 5 of the Fourteenth Amendment. Id. at *7.

Inasmuch as Title VII does not differentiate between men and women, see 42 U.S.C. § 2000e-2(a) (1994) (prohibiting discrimination "against any individual . . . because of . . . sex"), we believe our holding in Okruhlik that Title VII was enacted and amended in accord with the strictures of Section 5 must apply equally to men as it does to women. We therefore disagree with the defendants' contention that, although Title VII removes the bar of Eleventh Amendment immunity to federal court sex-discrimination actions by women, the Constitution requires a parsing of the legislative findings or review of the "proportionality and congruity" of remedies to determine whether the Eleventh Amendment bar also has been removed with respect to Title VII actions by men.[5]

---

[5]The Supreme Court has generally disallowed remedial legislation founded in Congress's power under Section 5 of the Fourteenth Amendment in instances where Congress failed to establish and identify the general problem that the legislation was intended to ameliorate. For example, the Supreme Court held that the Religious Freedom Restoration Act in City of Boerne v. Flores, 521 U.S. 507, 530-32 (1997), was an unconstitutional exercise of Congress's power under Section 5 because of the paucity of evidence suggesting a widespread pattern of religious discrimination and the disproportionality of the Act to its remedial objective. Likewise, the Supreme Court in Kimel v. Florida Board of Regents, 528 U.S. 62, 83-86 (2000), found the Age Discrimination in Employment Act beyond Congress's power under Section 5 because of a lack of evidence of age discrimination generally and the disproportionality of the remedies under the Act. Under the defendants' reasoning, if a non-African-American minority employee brought a race-discrimination claim against his state employer under

III.

The rulings of the District Court challenged in this interlocutory appeal are affirmed and the case is remanded for further proceedings.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

Title VII, and the legislative history of Title VII was devoid of any findings specific to that employee's minority group, the legislation would not abrogate the state's Eleventh Amendment immunity and the employee would be without recourse under Title VII. Cf. McDonald v. Santa Fe Transp. Co., 427 U.S. 273, 278-85 (1976) (holding that white employees may properly maintain race-discrimination claims under Title VII). Even putting the rather obvious Equal Protection Clause problems to one side, we do not think that the defendants' reasoning affords us a proper approach towards application of the Eleventh Amendment.