**Timothy McNEILL**

v.

**The ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY.**

**Civ. A. No. G–94–480.**

United States District Court, S.D. Texas, Galveston Division.

March 8, 1995.

---

J. Michael Fieglein, Hosey Presnall Hosey & Fieglein, Galveston, TX, for plaintiff.

Douglas W. Poole, McLeod Alexander Powel & Apffel, Galveston, TX, for defendant.

### ORDER GRANTING SUMMARY JUDGMENT

KENT, District Judge.

Pending before the Court is Defendant's Motion for Summary Judgment, brought pursuant to Fed.R.Civ.Proc. 56(c). For the reasons stated below, Defendant's Motion for Summary Judgment is GRANTED.

### I. Background

This case was brought under the Americans With Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. (hereinafter "ADA"). On June 25, 1988, Plaintiff experienced an on-the-job injury to his back. He underwent two surgical procedures to treat a herniated lumbar disc. Plaintiff did not return to work after either surgery.

In 1990, Plaintiff brought suit against Defendant under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., for damages arising out of his 1988 injury. He filed suit in the 212th Judicial District Court of Galveston County, Texas. During both the trial and deposition testimony, Plaintiff and his treating physicians allegedly testified under oath that the Plaintiff was permanently disabled and could not return to work. On January 21, 1992, a jury a returned a verdict in favor of Plaintiff in the amount of $305,000, including $125,000 as compensation for loss of future earning capacity. Judgment was entered and Defendant satisfied the Judgment.

On January 29, 1992, only eight days after the verdict was received, Plaintiff sought to return to his former position as a conductor-brakeman for Defendant. Based on Plaintiff's trial testimony and that of his two treating physicians, Defendant refused to allow the Plaintiff to return to work.

On March 10, 1992, Plaintiff appealed the Defendant's decision to a Public Law Board, created under the authority of the Railway Labor Act, 45 U.S.C. § 153. Public Law Boards were created by Congress to assume exclusive jurisdiction over disputes arising from the employment relationship. Subsequently, a neutral arbitrator denied Plaintiff's claim on the doctrines of judicial estoppel, collateral estoppel, and equitable estoppel.

On March 15, 1994, over two years after Plaintiff's request for reinstatement was denied, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC"). The EEOC issued a right-to-sue letter dated March 17, 1994, stating that the Charge had been dismissed as untimely since it was filed after the 300-day statute of limitations had run. On August 10, 1994, 131 days later, Plaintiff filed suit in this Court. On January 6, 1995, Defendant filed the present Motion for Summary Judgment.

## II. Standard of Review

■ Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. A fact is material if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists if there is a genuine issue for trial that must be decided by the trier of fact. In other words, summary judgment should not be granted if the evidence indicates that a reasonable fact-finder could find in favor of the non-moving party. *Id. See also Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

■ In ruling on a Motion for summary Judgment, the court must accept the evidence of the non-moving party and draw all justifiable inferences in his favor. Credibility determinations, weighing of the evidence, and the drawing of reasonable inferences are left to the trier of fact. *Anderson v. Liberty Lobby, supra,* 477 U.S. at 255, 106 S.Ct. at 2513–14.

■ Under Fed.R.Civ.P. 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once this burden is met, the burden shifts to the non-moving party to establish the existence of a genuine issue for trial. *Matsushita, supra,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Leonard v. Dixie Well Serv. & Supply, Inc.,* 828 F.2d 291, 294 (5th Cir. 1987). Where the moving party has met its Rule 56(c) burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts ... [T]he non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.' Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita, supra,* 475 U.S. at 596–97, 106 S.Ct. at 1361–62 (quoting Fed. R.Civ.P. 56(e)) (emphasis in original).

## III. Discussion

■ Plaintiff's claims are barred by the statute of limitations on two separate grounds. First, Plaintiff's Administrative Charge of Discrimination was not timely filed with the EEOC within the requisite 300-day limitations period. Although the ADA does not contain an explicit statute of limitations, Title I incorporates by reference the remedial provisions of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 12117(b) (incorporating by reference 29 U.S.C. § 701 et seq.). Under § 2000e–5(e), Title VII provides that an EEOC Charge shall be filed within 180 days of the alleged unlawful practice, unless initially filed with a state agency, in which event the Charge must be filed within 300 days of the event. *Griffin v. City of Dallas,* 26 F.3d 610 (5th Cir.1994).

■ The 300-day filing period set forth in § 706(e) of Title VII applies regardless of whether state proceedings are timely filed under state or local law. Additionally, the running of a limitations period for filing a discrimination claim is not tolled while the employee exhausts his remedies under a grievance procedure or claim filed with a state's Civil Rights Commission. *See, International Union of Elec., Radio and Mach. Workers, AFL–CIO Local 790 v. Robbins & Myers, Inc.,* 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976). The Supreme Court has stated that Congress intended to retain other remedies against private employer discrimination separate from and independent of the more elaborate procedures of Title VII. *See, International Union,* supra; *Mennor v. Fort Hood National Bank,* 829 F.2d 553, 554 (5th Cir.1987).

On March 3, 1994, Plaintiff filed his EEOC discrimination Charge, listing the Texas Commission on Human Rights (hereinafter "TCHR") as the state agency. As such, the 300-day limitations period is imposed. In his discrimination Charge, Plaintiff stated that he was denied the position on March 10, 1992. Hence, the last alleged act of discrimi-

nation occurred on March 10, 1992. However, Plaintiff did not file his Charge with the EEOC until March 15, 1994, over two years after the alleged discriminatory act. Although Plaintiff filed a complaint with the Public Law Board, the 300–day statute of limitations period was not tolled. As a result thereof, the EEOC dismissed Plaintiff's Charge as untimely, and thus, the Plaintiff's current claim is time-barred under the 300–day statute of limitations.

■ In addition, Plaintiff's claim is barred by his failure to file in Federal Court within the requisite 90 days after receipt of the EEOC's right-to-sue letter. As in Title VII cases, the Plaintiff must file his complaint within 90 days of receiving the right-to-sue letter. 42 U.S.C. § 2000e–5(f)(1); *Hinton v. CPC Intern, Inc.*, 520 F.2d 1312 (8th Cir.1975). The 90–day limitations period is entirely distinct from the requirement that the EEOC Charge must be timely filed. *Phillips v. General Dynamics Corp.*, 811 F.Supp. 788 (N.D.N.Y.1993).

■ An employee is presumed to have received the right-to-sue letter within a reasonable time period after it was mailed by the EEOC. *Roush v. Kartridge Pak Co.*, 838 F.Supp. 1328 (S.D.Iowa 1993). Seven days is deemed a reasonable time period, where a letter was properly addressed, stamped, and mailed to the employee at the address he provided to the EEOC. *Id.*

■ The right-to-sue letter issued by the EEOC was signed and dated on March 31, 1994. The letter was mailed to the address that the Plaintiff provided to the EEOC on his Charge dated March 3, 1994. The letter was sent from the EEOC's Houston office. It is therefore presumed that the Plaintiff received this letter between three to seven days from the date of mailing. Plaintiff's Complaint was filed in this Court on August 10, 1994, 126 days after the presumed date of receipt of the right-to-sue letter. Therefore, Plaintiff failed to file his Complaint in Federal District Court in a timely manner, and his claim is barred by the statute of limitations.

Turning from the purely technical aspects of this case, and even ignoring that Plaintiff has utterly failed to file his Complaint in a timely manner, this Court is seriously disturbed by the obvious bad faith exhibited by Plaintiff and his counsel, in substantively asserting this claim. At his trial, Plaintiff testified *under oath* that he was, in fact, *permanently* disabled. Plaintiff's treating physicians also took the stand and represented to the Court, while under oath, that indeed Plaintiff was permanently disabled and *unable to return to work.* Perhaps this Court's perception of the word "permanent" is slightly old-fashioned and unfairly restrictive, but to even suggest that a "permanent disability" would afflict the Plaintiff for a mere *eight days* is beyond *any* rational defense whatsoever. Webster defines "permanent" as "continuing or enduring without fundamental or marked change." Webster's Ninth New Collegiate Dictionary 876 (9th ed., 1990). Doubtless, had the trier of fact known that Plaintiff's "permanent disability" would persist for a staggering eight days and eight equally long nights, it would not have awarded the Plaintiff $305,000, with $125,000 of which being ostensibly for the sole and exclusive purpose of compensating him for his *permanent* injury and loss of future earning capacity.

Looking solely at the facts, this Court is astonished by the audacity of the Plaintiff in asserting that he was "rehabilitated" from a "permanent disability" within eight days. Indeed, absent a representation of outright Divine Intervention, which has not been proffered, the Court is left with an uncomfortable inference of outright fraud. Had the Plaintiff advanced his claim of discrimination after a protracted period of convalescence, or vigorous and successful rehabilitation, this Court would certainly have been eager to consider the merits of his claim. Had Plaintiff alleged that his physical condition had materially altered as a consequence of new medical treatments or scientific technology, this Court would be inclined to seriously address Plaintiff's claims. However, absent Plaintiff's contention that he sought, invoked, and benefitted from the services of a bona fide faith healer, this Court cannot even begin to imagine attributing any semblance of legitimacy to Plaintiff's claim of rehabilitation *only eight days* after a $305,000 verdict was

delivered. Conversely, Plaintiff is further advised that if he is willing to forfeit the jury verdict, and return the $305,000, this Court would eagerly direct its attention to any injustice he may have suffered.

In the regretful opinion of this Court, Plaintiff's claim of discrimination is a blatant attempt to extort additional money from the Defendant under the guise of the ADA. Congress enacted the ADA to address legitimate societal wrongs, and to reenfranchise the physically challenged. The ADA was designed to remedy the serious injustices which persons with disabilities encounter each and every day, and its lofty goals should be supported by legitimate factual underpinnings. It is the right of these individuals to participate fully and equally in society that this Court strives to protect. It was *not* the objective of the ADA, nor the intent of this Court, to facilitate and ensure double recoveries for the exclusive benefit of a duplicitous Plaintiff or his misled or over-eager counsel.

Plaintiff (and possibly his counsel) have endeavored to manipulate the provisions of a very liberal statute to achieve their own selfish ends with utter disregard for the true purpose of the statute and the real needs of those whom it was meant to protect, or indeed for the very real technical limitations of its timely application. This Court appreciates zealous advocacy by the officers of the Court who are motivated by a desire to see justice done; yet, this Court is frankly both appalled and offended by legal claims and arguments premised solely on financial greed. Given the egregious conduct of Plaintiff and the apparent willing complicity of his counsel, this Court is not at all surprised by the current public outcry for tort reform and other measures sought to curtail abusive litigation. It is precisely the type of conduct here exhibited by Plaintiff and his counsel which casts such a profoundly negative shadow upon personal injury attorneys in particular and the legal profession in general. This Court finds that no genuine issue of material fact exists, and therefore summary judgment is appropriate. Even a casual reading of the applicable statutory and case law would have revealed that this case is clearly time-barred, and even assuming its timeliness, its factual basis is either blatantly fraudulent or utterly ridiculous.

For the reasons set forth above, Defendant's Motion for Summary Judgment is **HEREBY GRANTED.** Plaintiff's claims are emphatically **DISMISSED WITH PREJUDICE.** The law affords the Plaintiff an opportunity to file Motions to Reconsider and the like; however, should Plaintiff elect to do so, this Court reserves the right to sua sponte impose Rule 11 sanctions, specifically including the apportioning of attorney's fees. *Any and all* further relief on this issue shall be sought in due course from the United States Court of Appeals for the Fifth Circuit. Plaintiff and his counsel shall jointly and severally bear all taxable costs incurred herein to date. If not timely paid, execution shall thereupon issue.

**IT IS SO ORDERED.**