**Robert M. JOHNSON, Plaintiff,**

**v.**

**U.S. STEEL CORPORATION, Defendant.**

Civ. No. 5–94–157.

United States District Court,
D. Minnesota,
Fifth Division.

Aug. 14, 1996.

Robert M. Johnson, Soudan, MN, pro se.

Joseph John Roby, Jr., Johnson Killen Thibodeau & Seiler, Duluth, MN, for U.S. Steel Corporation.

## MEMORANDUM ORDER

ERICKSON, United States Magistrate Judge.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to the consent of the parties, as authorized by Title 28 U.S.C. § 636(c)(3), upon the Defendant's Motion for Summary Judgment.

A Hearing on the Motion was conducted on June 13, 1996, at which time the Plaintiff appeared *pro se, in forma pauperis,* and the Defendant appeared by Joseph J. Roby, Esq.

For reasons which follow, we grant the Defendant's Motion.

### II. *Factual and Procedural History*

By this action, the Plaintiff, who is a former employee of the Defendant, seeks relief, pursuant to Title 42 U.S.C. § 12101, *et seq.,* for alleged violations of the Americans with Disabilities Act of 1990 ("ADA"). In 1973, the Plaintiff began working for the Defendant, as a field electrician, at its Minnesota Ore Operations near Mt. Iron, Minnesota. *Deposition of Robert M. Johnson,* at 28–29. His employment was governed by a basic labor agreement (the "BLA"), which is a collectively bargained employment contract between the Defendant and the Plaintiff's Union, the United Steelworkers of America ("USWA"). Throughout the course of his employment with the Defendant, the Plaintiff was represented by the USWA. *Affidavit of David A. Aagenes,* at ¶ 2.

The Plaintiff suffered on-the-job injuries to his left knee in 1975, 1977 and in 1980. *Deposition of Robert M. Johnson,* at 29, 31. As a result of these injuries, he underwent five surgical procedures on his knee, and these surgeries were performed by Dr. Peter L. Boman, of the Duluth Clinic. *Id.* at 30–31. In August of 1984, the Plaintiff, and certain other employees of the Defendant, were placed on an economic layoff. *Id.* at 37; *Affidavit of David A. Aagenes,* at ¶ 5. During this layoff, the condition of the Plaintiff's left knee worsened and, as a result, he was physically unable to return to work when the Defendant sought his recall. *Affidavit of David A. Aagenes,* at ¶ 5; *Deposition of Rob-*

ert *M. Johnson*, at 37. At approximately this same time, the Plaintiff filed a Petition for Workers' Compensation Disability Benefits,[1] and was subsequently awarded benefits as being temporarily, totally disabled, and he continued to receive these benefits, without interruption, until the Fall of 1993. *Deposition of Robert M. Johnson*, at 44 and 65–66. In fact, after being laid off in August of 1984, the Plaintiff never returned to the Defendant's employ. *Deposition of Robert M. Johnson*, at 44 and 65; *Affidavit of David A. Aagenes*, at ¶ 5.

The Defendant contends that the Plaintiff's intervening, work-related physical impairment did not convert his economic layoff into a disability layoff, for purposes of his right to recall, as allowed on the basis of his seniority. *Affidavit of David A. Aagenes*, at ¶ 5. Further, the Defendant maintains that the BLA, which governs the terms of the Plaintiff's employment, provides for a loss of both seniority and, resultantly, his rights of recall, where the affected employee is absent from work, for five years, because of an economic layoff. *Id.* at ¶ 4, and *Exhibits A, B & C.* As a consequence, since the Plaintiff did not return to work in August of 1989, the Defendant regarded him as having suffered a "break in continuous service", with a resulting forfeiture of his seniority and of his recall rights. *Id.* at ¶ 5. In this respect, all concede that, under the terms of the BLA, the loss of an employee's recall rights is the effective equivalent of a termination of employment. *Deposition of Robert M. Johnson*, at 15; *Affidavit of David A. Aagenes*, at ¶ 4. Accordingly, the Record reveals that both the Plaintiff and the Defendant considered his employment to have been terminated in 1989 and, while the Record further reflects that the Plaintiff attempted to challenge this termination, through the grievance procedures afforded by the BLA, there is no evidence of any disposition of this grievance in the Record before us. *Deposition of Robert*

*M. Johnson*, at 14 and 20–21, and *Exhibits 14, 32, 39 and 44.*

In April of 1993, the Defendant filed a "Notice of Intent to Discontinue Workers' Compensation Benefits" ("NOID"), alleging that the Plaintiff had failed to cooperate with his rehabilitation plan. *Id.* at 96–97, and *Exhibit 37.* The NOID resulted in the conduct of a Hearing, on April 30, 1993, before State Workers' Compensation Judge Jerome Arnold, at which the Plaintiff appeared personally, and by his counsel, Robert Falsani ("Falsani"). *Id.* at 98. At this Hearing, the Plaintiff agreed to sign a rehabilitation plan, although he now claims that Judge Arnold forced him to execute that document. *Id.* at 98–100. On May 6, 1993, while still receiving workers' compensation disability benefits, the Plaintiff contacted the United States Equal Employment Opportunity Commission ("EEOC"), and completed an Intake Questionnaire in which he alleged that the Defendant had discriminated against him, on the basis of his disability, by terminating his employment, and by issuing the NOID which resulted in his first Compensation Hearing. *Id.*, and *Exhibit 42.*

On June 15, 1993, the Defendant filed a second NOID, which alleged that the Plaintiff had refused to cooperatively participate in a functional capacities evaluation. *Id.* at 113, and *Exhibit 46.* Pursuant to this NOID, the Plaintiff appeared at a second Hearing before Judge Arnold, and again was legally represented by Falsani, as his legal counsel. *Id.* at 113–14. During the course of this Hearing, Judge Arnold ruled that the NOID was moot as, within six weeks after its issuance, the Plaintiff had submitted to the requested evaluation of his physical capacities. *Id.* at 114, and *Exhibit 47.*

On September 29, 1993, the Defendant issued a third NOID, which reported that the Plaintiff had failed to look for work and, therefore, was not in compliance with the rehabilitation plan that he signed at the first

---

1. The Plaintiff insists that he never applied for workers' compensation benefits, but he received them for a period of ten years because, "instead of bringing [him] back to work[,] [the Defendant] willingly paid [him] to sit at home." *Transcript*, at 24. We must reject this insistence for, under Minnesota law, only an injured employee, or that employee's dependent, may file a petition for workers' compensation benefits. See, *Minnesota Statutes Section 176.271; Tatro v. Hartmann's Store*, 295 Minn. 282, 287–88 (1973). Necessarily, in order to have received workers' compensation benefits, the Plaintiff would have had to have filed the requisite benefit claim.

Compensation Hearing. *Id.* at 124, and *Exhibit 52.* On October 15, 1993, in conjunction with the third NOID, Judge Arnold conducted a third Compensation Hearing, at which the Plaintiff was again represented by Falsani. *Id.* at 127, and *Exhibit 54.* Subsequent to this Hearing, on October 22, 1993, Judge Arnold directed that the Plaintiff's workers' compensation benefits should be suspended, because he found, by a preponderance of the evidence, that the Plaintiff had failed to make a good faith effort to cooperate with his rehabilitation plan. *Id.* Based upon this ruling, the Defendant discontinued the Plaintiff's workers' compensation benefits. *Id.* at 128–29, and *Exhibit 55.* Indeed, the Plaintiff has acknowledged that the Defendant did not terminate his benefits until after receiving permission to do so by the rulings of Judge Arnold. *Id.* at 128 and 179.

Subsequently, the Plaintiff filed an objection to the discontinuation of his workers' compensation benefits. *Id.* at 130, and *Exhibit 57.* Thereafter, on December 29, 1993, Workers' Compensation Judge Ronald Erickson conducted a Hearing on his objection, at which Hearing the Plaintiff again appeared personally, and with his attorney. *Id.* at 141–42, and *Exhibit 65.* Following this Hearing, Judge Erickson affirmed Judge Arnold's discontinuance of the Plaintiff's workers' compensation benefits. *Id.* and *Exhibit 65.*

Since the time of his initial layoff, and continuing thereafter, the Plaintiff, either personally or through his counsel or his physicians, has consistently asserted—in a variety of ways—that he is totally disabled and is unable to perform any work. By way of illustration, the Plaintiff has made the following representations, or they have been made on his behalf without substantive contradiction from him:

1. On January 31, 1986, the Plaintiff signed a Disability Claim report in which he claimed to have been totally disabled since September 10, 1984, and that it was not known when he would be physically able to return to work, *id.*, and *Exhibit 4;*

2. On June 10, 1993, Dr. Boman informed the Plaintiff's workers' compensation rehabilitation specialist that the Plaintiff could not work outside the home, *id.*, and *Exhibit 45;*

3. On October 14, 1993, Dr. Boman expressed his opinion that, because of the Plaintiff's knee injury, he could not look for work outside of his home, would be prevented from looking for work because of pain and inclement weather, and could not be expected to attend work on a competitive basis at a set schedule, *id.*, and *Exhibit 53;*

4. On November 8, 1993, in his written objection to Judge Arnold's Order that discontinued his workers' compensation benefits, the Plaintiff represented that he had been totally disabled from October 22, 1993—the date on which his benefits were discontinued—to the "present and continuing," *id.*, and *Exhibit 57;*

5. In December of 1993, in an undated letter, the Plaintiff informed his workers' compensation rehabilitation specialist that the requirements of his job search were "push[ing] [him] way beyond [his] capabilities," *id.*, and *Exhibit 60;*

6. At his Compensation Hearing of December 29, 1993, the Plaintiff maintained his "insist[ence] [that] he was retired and permanently disabled," *id.*, and *Exhibit 65;* and

7. On April of 1994, the Plaintiff filed a sworn Workers' Compensation Petition, in which he attested that he was totally disabled, dating from December 30, 1993, and extending to the time of the filing of that Petition. *Id.*, and *Exhibit 67.*

In addition, since 1990, the Plaintiff has filed no fewer than three claims for Disability Insurance Benefits, and at least one claim for Supplemental Security Income, with the United States Social Security Administration. In each of these claims, the Plaintiff has repeatedly represented, in the applications for benefits and in the related agency paperwork, that he is totally disabled and is unable to work. Moreover, on each of these applications, the Plaintiff has affixed his signature, beneath an advisory which informed him that making a false statement or representation, in connection with a claim for Social Security benefits, was a crime punishable under Federal law, and that, by signing the documents,

the Plaintiff was certifying that all of the statements, that were contained in his application for benefits, were true. *Id.*, and *Exhibits 16, 17, 19, 33, 34, 41, 74, 75, and 76.*

Further, in a letter dated July 15, 1994, which he sent to the EEOC, the Plaintiff admitted that the Defendant was "correct in stating that my restrictions from Dr. Boman no longer allow me to work outside of my home." *Id.*, and *Exhibit 69.* Subsequently, in a second letter to the EEOC, which was dated September 3, 1994, the Plaintiff advised that it was no longer safe for him to work outside of his home. *Id.*, and *Exhibit 71.*

In fact, the Plaintiff has made the same representations to a variety of other persons. Either personally, or through his physician or attorney, the Plaintiff has repeatedly represented himself as being disabled, as reflected by the following:

1. In November of 1988, in an undated letter, the Plaintiff informed the Defendant that, "[i]f not for the severity of my Workman's Comp. disability, I would have been working steadily since 1984, and still be working[,]" *id.*, and *Exhibit 13;*

2. On January 17, 1990, the Plaintiff told an unidentified physician that, because of his physical impairment, he could only work one hour per day in his home shop, *id.*, and *Exhibit 15;*

3. In an undated letter, that was received by Dr. Boman in late 1991 or early 1992, the Plaintiff requested that Dr. Boman place him on a "no work until further notice" restriction, *id.*, and *Exhibit 22;*

4. During the same time period, the Plaintiff informed Dr. Boman that he could not "do any type of physical work," *id.*, and *Exhibit 23;*

5. In a letter dated September 16, 1993, Dr. Boman informed a representative of the Defendant that "it would be very difficult for [the Plaintiff] to carry out a job search at this time[,]" *id.*, and *Exhibit 51;*

6. In a letter dated October 1, 1993, Falsani informed Dr. Boman that the Plaintiff claimed that "there is virtually nothing he can do in light of his pain and disability with his knee[,]" *id.*, and *Exhibit 53;* and

7. On April 12, 1995, the Plaintiff informed Dr. Thomas Rollie, of the Ely Medical Center, that he was "on complete disability" and was "totally disabled." *Id.*, and *Exhibit 73.*

Before commencing this action, the Plaintiff filed a Complaint with the EEOC, in which he alleged that the Defendant had discriminated against him in violation of the ADA. On September 6, 1994, the EEOC determined that there was insufficient evidence to support the Plaintiff's allegations but, nevertheless, on September 10, 1996, the EEOC issued a "right-to-sue" letter, which informed the Plaintiff of his right to commence an action in the Federal Courts.

On December 12, 1994, the Plaintiff then commenced this action by the filing of a Complaint in which he alleges that the Defendant violated the ADA, by unlawfully discriminating against him in the following three respects:

1. By terminating his employment;

2. By terminating his workers' compensation benefits; and

3. By acts of "harassment."

When pressed for further detail, the Plaintiff advised that the alleged harassment was solely related to the Defendant's discontinuation of his workers' compensation benefits, *id.* at 16–17, 103–04, and 123, and, therefore, the second and third claims are duplicative of each other.

In responding to these allegations, the Defendant seeks a Summary Judgment as to the entirety of the Plaintiff's Complaint. The Plaintiff has been afforded a full opportunity to respond to the request for Summary Judgment, see, *LR7.1(b)(2), Local Rules of the United States District Court for the District of Minnesota,* but has elected not to do so. Accordingly, on this Record, the matter is ripe for determination.

### III. *Discussion*

A. *Standard of Review.* We are mindful that Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265 (1986). · Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the non-moving party, and we have found no triable issue, and the Plaintiff has not identified any genuine issue of material fact which would preclude the entry of Summary Judgment. *Cram v. Lamson & Sessions Co.,* 49 F.3d 466, 471 (8th Cir.1995); *Barnard ·v. Jackson County, Missouri,* 43 F.3d 1218, 1223 (8th Cir.1995), cert. denied, —— U.S. ——, 116 S.Ct. 53, 133 L.Ed.2d 17 (1995). For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a verdict for the non-moving party. See, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Churchill Business Credit Inc., v.· Pacific Mutual Door Co.,* 49 F.3d 1334, 1336 (8th Cir.1995); *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66–67 (8th Cir.1994).

As Rule 56(e), Federal Rules of Civil.Procedure, makes clear, once the moving party files a properly supported Motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute. In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *Rule 56(e), Federal Rules of Civil Procedure; Krenik v. County of Le Sueur,* 47 F.3d 953, 957 (8th Cir.1995); *State of Nebraska ex rel. Nelson v. Central Interstate Low–Level Radioactive Waste Commission,* 26 F.3d 77, 80 (8th Cir.1994), cert. denied, —— U.S. ——, 115 S.Ct. 483, 130 L.Ed.2d 395 (1994).

Moreover, a Defendant is entitled to Summary Judgment where a Plaintiff has failed "to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* supra 477 U.S. at 322, 106 S.Ct. at 2552;· *St. Paul Fire & Marine Ins. Co.·v. Federal Deposit Ins. Corp.,* 968 F.2d 695, 699 (8th Cir.1992). No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of [the Plaintiff's] case necessarily renders all other facts immaterial." *Id.* 477 U.S. at 323, 106 S.Ct. at 2552; *Fischer v. NWA, Inc.,* 883 F.2d 594, 599 (8th Cir.1989), cert. denied, 495 U.S. 947, 110 S.Ct. 2205, 109 L.Ed.2d 531 (1990).

■ Lastly, since employment discrimination cases inevitably involve inferences rather than direct evidence, and since intent is frequently the central issue, our Court of Appeals has cautioned that Summary Judgments should "seldom" be used, or at least used "sparingly" in such causes of action. *Davis v. Fleming Companies,* 55 F.3d 1369, 1371 (8th Cir.1995); *Oldham v. West,* 47 F.3d 985, 988 (8th Cir.1995); *Hardin v. Hussmann Corp.,* 45 F.3d 262, 264 (8th Cir.1995); *Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir.1994); *Gill v. Reorganized School Dist. R–6, Festus, Missouri,* 32 F.3d 376, 378 (8th Cir.1994); *Johnson v. Minnesota Historical Society,* 931 F.2d 1239, 1244 (8th Cir.1991), citing *Haglof v. Northwest Rehabilitation, Inc.,* 910 F.2d 492, 495 (8th Cir.1990). Nevertheless, while "summary judgment should seldom be granted in employment discrimination cases, if. [the.Plaintiff] fails to establish a factual dispute on each element of the *prima facie* case, summary judgment is appropriate." *Bialas v. Greyhound Lines, Inc.,* 59 F.3d 759, 762 (8th Cir.1995), quoting *Weber v. American Express Co.,* 994 F.2d 513, 515–16 (8th Cir.1993); see also, *Wilson v. International Business Machines Corp.,* 62 F.3d 237, 240 (8th Cir.1995).

B. *Legal Analysis.* Upon our close review, we find that the disposition of the Defendant's Motion is governed by a determination of whether the Plaintiff's oft-repeated representations of being completely disabled and, therefore, of being wholly unable to work, should defeat his claims under the ADA. We conclude that, as a matter of law, they do.

■ 1. *Standard of Review.* The ADA prohibits employers from discriminating "against a qualified individual with a disabili-

ty because of the disability of such individual." *Title 42 U.S.C. § 12112(a)*. Accordingly, in order to establish a *prima facie* case under the ADA, a Plaintiff must demonstrate the following: ·

1. that he is a "disabled" person within the meaning of the ADA;

2. that he is qualified to perform the essential functions of the job, either with or without reasonable accommodation; and

3. that he has suffered an adverse employment action under circumstances from which an inference of unlawful discrimination arises.

*Aucutt v. Six Flags Over Mid–America, Inc.*, 85 F.3d 1311, 1318 (8th Cir.1996); *Price v. S–B Power Tool*, 75 F.3d 362, 364–65 (8th Cir. 1996), petition for cert. filed, 64 U.S.L.W. 3765 (U.S., April 29, 1996); *Benson v. Northwest Airlines, Inc.*, 62 F.3d 1108, 1112 (8th Cir.1995).

· In recent years, a growing body of authority has emerged which holds that an individual, who has maintained that he is totally disabled and, therefore, is unable to work, cannot satisfy the second element of an ADA *prima facie* case; namely, that he is a "qualified individual with a disability." See, *Reiff v. Interim Personnel, Inc.*, 906 F.Supp. 1280, 1289–92 (D.Minn.1995); *August v. Offices Unlimited, Inc.*, 981 F.2d 576, 582–84 (1st Cir.1992); *Miller v. U.S. Bancorp.*, 926 F.Supp. 994, 998–1000 (D.Or.1996); *Morton v. GTE North Inc.*, 922 F.Supp. 1169, 1181–83 (N.D.Tex.1996); *Cline v. Western Horseman, Inc.*, 922 F.Supp. 442, 446–48 (D.Colo. 1996); *Pegues v. Emerson Electric Co.*, 913 F.Supp. 976, 980–81 (N.D.Miss.1996); *Smith v. Midland Brake, Inc.*, 911 F.Supp. 1351, 1357–60 (D.Kan.1995); *Nguyen v. IBP, Inc.*, 905 F.Supp. 1471, 1484–1485 (D.Kan.1995); *Harden v. Delta Air Lines, Inc.*, 900 F.Supp. 493, 496–97 (S.D.Ga.1995); *Cheatwood v. Roanoke Industries*, 891 F.Supp. 1528, 1537–

38 (N.D.Ala.1995); *McNeill v. Atchison, Topeka & Santa Fe Ry. Co.*, 878 F.Supp. 986, 990–91 (S.D.Tex.1995); *Parker v. Metropolitan Life, Ins. Co.*, 875 F.Supp. 1321, 1325–26 (W.D.Tenn.1995); *Garcia–Paz v. Swift Textiles, Inc.*, 873 F.Supp. 547, 554–556 (D.Kan. 1995); *Reigel v. Kaiser Foundation Health Plan of N.C.*, 859 F.Supp. 963, 967–970 (E.D.N.C.1994); *McNemar v. The Disney Stores, Inc.*, 1995 WL 390051 *3–5 (E.D.Pa. 1995), aff'd, 91 F.3d 610 (3rd Cir.1996); *Kennedy v. Applause, Inc.*, 1994 WL 740765 *2–3 (C.D.Cal.1994), aff'd, 90 F.3d 1477 (9th Cir., 1996).[2]

▪ The rationale underlying these decisions has been aptly explained in *Reigel v. Kaiser Foundation Health Plan of N.C.*, supra at 970, as follows:

Plaintiff in the case sub judice cannot speak out of both sides of her mouth with equal vigor and credibility before the court. Plaintiff now seeks money damages from [the defendant] on her assertion that she was physically willing and able to work during the same period of time that she was regularly collecting disability payments on her assertion that she was physically able to work.

In a similar vein, Courts have found that repeated assertions of disability, and of a claimant's inability to work, effectively estop that claimant from maintaining that he is a "qualified individual with a disability." See, *Cline v. Western Horseman, Inc.*, supra; *Smith v. Midland Brake, Inc.*, supra; *Lewis v. Zilog, Inc.*, 908 F.Supp. 931, 944–45 (N.D.Ga.1995); *Nguyen v. IBP, Inc.*, supra; *Ricks v. Xerox Corp.*, 877 F.Supp. 1468, 1477 n. 9 (D.Kan.1995); *Garcia–Paz v. Swift Textiles, Inc.*, supra; *Lamury v. Boeing Co.*, 1995 WL 643835 *6 (D.Kan.1995). In the words of one Court:

**2.** In addition, in a decision that interprets the analogous provisions of the Rehabilitation Act of · 1973, see, *Title 29 U.S.C. § 794*, our Court of Appeals has determined that a plaintiff's admission of disability necessarily precludes her from arguing that she was a "qualified handicapped .person" who was able to perform her job with "reasonable accommodation." *Beauford v. Father Flanagan's Boys' Home*, 831 F.2d 768, 771 (8th Cir.1987), cert. denied, 485 U.S. 938 (1988).

Since the ADA expressly requires that its provisions be interpreted in a manner that "prevents imposition of inconsistent or conflicting standards for the same requirements under [the ADA] and the Rehabilitation Act of 1973," *Title 42 U.S.C. § 12117(b)*, cases interpreting the Rehabilitation Act are relevant to our analysis here. · *Benson v. Northwest Airlines, Inc.*, 62 F.3d 1108, 1112 n. 2 (8th Cir.1995).

Plaintiff, her counsel, and her physician have consistently represented that as of that date, because of injury or sickness, she has been unable to perform each material duty of her regular occupation. Having collected substantial benefits, based on these unambiguous and seemingly informed representations, plaintiff is estopped from now claiming that she *could* perform the essential functions of her position.

*Garcia–Paz v. Swift Textiles, Inc.*, supra at 555 [emphasis in original; footnote omitted]. The ultimate result, under either rationale, is the same. A plaintiff cannot assert that he is both disabled *and* qualified, without sacrificing his ability to competently establish a *prima facie* case under the ADA, and his claims under that Act must fail.

■ 2. *Legal Analysis.* With the foregoing principles in mind, we conclude that, as a matter of law, the Defendant is entitled to an entry of Judgment in its favor. Whether viewed as an estoppel, or as an inability to establish a necessary element of his *prima facie* case, the Plaintiff cannot competently argue that he is a qualified individual with a disability under the ADA. His repeated claims of complete disability, and of an inability to perform work activity, which were made in a variety of settings and often under oath or under the penalty of perjury, have convincing force and effect. Simply put, the Plaintiff "cannot speak out of both sides of [his] mouth with equal vigor and credibility," by first collecting substantial financial benefits upon his averments of total disability, and then obtain an award of monetary damages by asserting that his prior representations, for which he was amply rewarded, were simply in error.

■ In this respect, we think it telling that the Plaintiff first approached the EEOC, with allegations that he was being discriminated against on the basis of his disability, and with an implicit representation that he was capable of working for those who were guilty of the alleged discrimination, at the same time that he was receiving workers' compensation benefits on account of his inability to work. Under similar such circumstances, the Courts have consistently found that the claimants were barred from arguing that they were qualified and disabled. See, e.g., *Smith v. Midland Brake, Inc.*, supra; *Cheatwood v. Roanoke Industries*, supra at 1538; *McNeill v. Atchison, Topeka & Santa Fe Ry. Co.*, supra at 990–91; *Garcia–Paz v. Swift Textiles, Inc.*, supra; *Reigel v. Kaiser Foundation Health Plan of N.C.*, supra. We are aware of no reason why the Plaintiff here should escape the same result, and he has drawn no legal authority, or any factual distinctions, which militate in favor of a different ruling.[3] Consequently, on this basis alone, the Defendant is entitled to an award of Summary Judgment on the entirety of the Plaintiff's Complaint.

■ Moreover, we agree with the Defendant that each of the Plaintiff's claims is also fatally flawed on an individualized basis. First, the effective date of the ADA is July

---

3. At the Hearing on this Motion, the Plaintiff maintained that the EEOC, through the issuance of a "right-to-sue" letter, has conclusively determined that he is a "qualified individual with a disability." He bases this argument upon the following language, which is contained in that letter:

> All requirements for coverage have been met. The Charging Party, who is disabled, alleges that his disability was a factor in the termination of his disability benefits and in the harassment he endured.

We cannot, however, attach determinative weight to this boilerplate provision. Although a "right-to-sue" letter is an essential prerequisite to the filing of an action under the ADA in Federal Court, see, e.g., *Osborn v. E.J. Brach, Inc.*, 864 F.Supp. 56, 57 (N.D.Ill.1994); *Sherman v. Optical Imaging Systems, Inc.*, 843 F.Supp. 1168, 1179–80 (E.D.Mich.1994), the issuance of such a letter is not a substitute for a judicial determination that a viable ADA claim has been presented. This would seem to be especially so where, as here, the right-to-sue letter goes on to record "that there [was] insufficient evidence to support [the Plaintiff's] allegations." Furthermore, under any responsible reading, the letter's statement that "[a]ll requirements for coverage have been met[,]" merely reflects that the Defendant was a "covered entity," within the meaning of the ADA—that is, that the Defendant was an employer, who was engaged in an industry affecting commerce, and who had 15 or more employees, for each working day in each of 20 or more calendar weeks, in the current or preceding calendar year. See, *Title 42 U.S.C. § 12111(2) and (5)*.

26, 1992, and the Act does not have retroactive application. See, *Tschida v. Ramsey County*, 927 F.Supp. 337, 340 (D.Minn.1996); *Heise v. Genuine Parts Co.*, 900 F.Supp. 1137, 1152 n. 8 (D.Minn.1995); see also, *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 296 (7th Cir.1995); *Vande Zande v. State of Wisconsin Dept. of Administration*, 44 F.3d 538, 545 (7th Cir.1995); *O'Bryan v. City of Midland*, 9 F.3d 421 (5th Cir.1993). In this case, by his own admission, see, *Deposition of Robert M. Johnson*, at 14 and 20–21, and *Exhibits 39 & 44*, the Plaintiff's employment was terminated in August of 1989, and therefore, his claim, which arises from his employment termination, falls outside of the permissible reach of the Act.[4]

■ We also conclude that the Plaintiff's remaining two claims, which both relate to the Defendant's decision to discontinue his workers' compensation benefits, fail to allege violations of the ADA. As we have noted, an essential element of an ADA *prima facie* case is an assertion that the Plaintiff has suffered an adverse employment action, under circumstances which properly raise an inference of unlawful discrimination. No such inference arises from the discontinuation of the Plaintiff's workers' compensation benefits, as the Record conclusively shows that the Plaintiff's benefits were terminated because of his own failure to comply with the terms of the rehabilitation plan, as determined by a Minnesota Workers' Compensation Court. The Record further reflects that, in seeking to discontinue the Plaintiff's disability benefits, the Defendant adhered to the procedures that were mandated by State law, and it did not discontinue his benefits until allowed to do so by an appropriate Administrative Order. We are aware of no legal authority which would impute an unlawful intent to an employer's acceptance of a valid Administrative Order, so as to raise a justifiable inference of a discriminatory purpose. Accordingly, when viewed through the prism of the ADA, no reasonable Juror[5] could conclude that the Plaintiff was qualified for relief under that Statute, and the Defendant is, therefore, entitled to Judgment as a matter of law. *Nebraska v. Wyoming*, 507 U.S. 584, 590, 113 S.Ct. 1689, 1694–95, 123 L.Ed.2d 317 (1993) ("In determining whether a material factual dispute exists, the court views the evidence through the prism of the controlling legal standard.").

NOW, THEREFORE, It is—

ORDERED:

That the Defendant's Motion for Summary Judgment [Docket No. 39] is GRANTED.

---

**4.** At the Hearing in this matter, the Plaintiff—for the first time—sought to assert a claim of wrongful termination arising from the Civil Rights Act of 1991, see, *Title 42 U.S.C. § 2000e et seq.*. Although mindful that the Plaintiff appears in this action *pro se*, we are not receptive to the assertion of new claims for relief at the Summary Judgment stage, particularly where, as here, the case was commenced nearly a year and a half before the Summary Judgment Hearing. In any event, the Civil Rights Act of 1991 offers no relief to the Plaintiff, as the effective date of that Act is November 21, 1991, and, like the ADA, the proscriptions of the Act are not retroactive. See, *Landgraf v. USI Film Products*, 511 U.S. 244, ———, 114 S.Ct. 1483, 1507–08, 128 L.Ed.2d 229 (1994); see also, *Maitland v. University of Minnesota*, 43 F.3d 357, 361–363 (8th Cir.1994); *Polacco v. Curators of University of Missouri*, 37 F.3d 366, 370 (8th Cir.1994); *Wright v. General Dynamics Corp.*, 23 F.3d 1478, 1479 (8th Cir.1994).

**5.** As the Supreme Court explained, in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986):

The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict—"whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed."

Quoting, *Improvement Co. v. Munson*, 14 Wall. 442, 448, 20 L.Ed. 867 (1872) [emphasis in original].

Given the Defendant's compliance with the Minnesota Workers' Compensation Statute, insofar as the termination of the Plaintiff's benefits were concerned, a reasonable Juror could not conclude that the termination of those benefits was the product of any unlawful animus, on the Defendant's part, toward the Plaintiff's disability.