_____

No. 95-3281
_____

Barbara Jean Robinson,     *
     *
     Appellant,     *
     *
     v.     *  Appeal from the United States
     *  District Court for the Southern
Neodata Services, Inc.,     *  District of Iowa.
     *
     Appellee,     *
     *
Susan M. Kipp; Al Winston,     *
     *
     Defendants.     *


_____

Submitted:  May 16, 1996

Filed:  August 30, 1996
_____

Before MURPHY and ROSS, Circuit Judges, and VAN SICKLE,[*] District Judge.

ROSS, Circuit Judge.


    Appellant Barbara Jean Robinson appeals from the district court's[1] determination following a bench trial that Robinson failed to prove appellee Neodata Services, Inc. (Neodata) had discriminated against her on the basis of her disability under the Americans With Disabilities Act, 42 U.S.C. § 12101, et seq. (ADA).

_____

    [*]The HONORABLE BRUCE M. VAN SICKLE, Senior District Judge for the District of North Dakota, sitting by designation.

    [1]The Honorable Charles R. Wolle, Chief Judge, United States District Court for the Southern District of Iowa.

We affirm.

Robinson, born June 11, 1934, worked as a clerk in Neodata's magazine mail processing department, operating an automatic OPEX mail-opening machine which required repetitive gripping and grasping, opening mail by hand, and countersorting.  In February 1991, Robinson fell at work and suffered an injury that eventually required her to reduce her work load to part-time.  Robinson received workers' compensation benefits related to this injury.

In November 1991, Dr. Kevin Smith placed Robinson on some permanent work restrictions that prevented her from operating the OPEX machine.  On November 21, 1991, Robinson was placed on medical leave without pay. Neodata encouraged her to apply for future open positions.  In early 1992, Dr. Michael Makowsky gave Robinson a 6% disability rating on her right arm, and continued the permanent work restrictions with a small increase in the amount of weight Robinson could lift.  Dr. Makowsky indicated that Robinson had a minor impairment that would have little, if any, affect on Robinson's ability to perform major life activities, including working.

Robinson states that from November 1991 to April or May 1992, she regularly contacted Neodata about returning to her old position or obtaining a new position.  Robinson applied for four different positions at Neodata, some of which were a grade level higher than her previous position, but was rejected each time.  On June 22, 1992, Susan Kipp, manager of personnel, sent Robinson a letter stating that Robinson had exceeded Neodata's six-month maximum medical leave and therefore she would be terminated in thirty days if not approved to return to work.  Robinson, however, was not terminated on the specified date and the medical leave was extended.  Kipp subsequently arranged for the company nurse to take Robinson on a tour of the Neodata facilities to show and explain available jobs to her.  Robinson was scheduled to start in-house

training during the summer of 1992, but she did not participate in the training.

In April of 1993, Neodata offered Robinson a position as a mail desk clerk. Neodata wrote to Robinson advising her of the position in the special services department by a letter dated April 20 and by another letter dated April 27. The April 20 letter gave Robinson until April 26 to return to work, and the April 27 letter advised Robinson that she was expected to return to work by May 3, 1993. Each letter indicated that her failure to return to work on the date specified would lead to her termination. Robinson informed Neodata that she was in California and could not return by that date. Neodata then extended her return-to-work date until May 10. When Robinson did not return to work on that date, Neodata terminated her employment.

The ADA prohibits employment discrimination "against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). A plaintiff seeking relief under the ADA must show (1) that she is a disabled person within the meaning of the ADA; (2) that she is able to perform the essential functions of the job, with or without reasonable accommodation; and (3) that she suffered an adverse employment action "because of" her disability. Price v. S-B Power Tool, 75 F.3d 362, 365 (8th Cir. 1996); Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1112 (8th Cir. 1995). "Disability" is defined under the ADA to include:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). Under the regulations, "major life activities" include "functions such as caring for oneself,

performing manual tasks, . . . and working."  29 C.F.R. § 1630.2(i).
"Substantially limits" means "significantly restricted in the ability to
perform either a <u>class of jobs</u> or a <u>broad range of jobs in various classes</u>
as compared to the average person having comparable training, skills and
abilities."  29 C.F.R. § 1630.2(j)(3)(i) (emphasis added).  "The inability
to perform a single, particular job does not constitute a substantial
limitation in the major life activity of working."  <u>Id</u>.; <u>see also</u> <u>Wooten</u>
<u>v. Farmland Foods</u>, 58 F.3d 382, 386 (8th Cir. 1995).

Robinson argued at trial that her physical disability substantially
affects the major life activity of working.  While Robinson has an
impairment, the evidence in the record shows that she is not significantly
restricted in her ability to work, but merely is unable to perform the
primary function of her previous position as a mail processing clerk.
Robinson's own medical expert, Dr. Makowsky, opined that Robinson had only
a 6% impairment rating of the right upper extremity and that this minor
impairment would have little, if any, affect on her ability to perform
major life activities, including working.  Because Robinson failed to
establish that her physical impairment substantially limits one or more of
her major life activities, or that she otherwise fits within the definition
of disability, we conclude that the district court did not err in
determining that Robinson is not disabled under the ADA.[2]

---

[2]Robinson argues that the Social Security Administration's
determination that she was totally disabled, and thus entitled to
benefits, had a preclusive effect on the issue of whether she was
disabled under the ADA.  Social Security determinations, however,
are not synonymous with a determination of whether a plaintiff is
a "qualified person" for purposes of the ADA.  <u>See</u> <u>Smith v.</u>
<u>Dovenmuehle Mtg., Inc.</u>, 859 F. Supp.  1138, 1141-42 (N.D. Ill.
1994) (citing <u>Overton v. Reilly</u>, 977 F.2d 1190, 1196 (7th Cir.
1992)).  At best, the Social Security determination was evidence
for the trial court to consider in making its own independent
determination.

Even if Robinson had successfully established that she is a "disabled" person under the ADA, we would nevertheless affirm the district court's decision in favor of Neodata, because we conclude that Robinson failed to establish that she was discharged because of her disability. Evidence in the record shows that Neodata attempted to reasonably accommodate Robinson's work restrictions by, among other things, providing Robinson with a reduced-hour shift, allowing a medical leave in excess of the company's standard six-month leave, offering Robinson skills training and career counseling, and ultimately offering Robinson a job she was qualified for and could perform within her restrictions without requiring her to interview for the position. Robinson was ultimately terminated only when she failed to report to work by the May 10, 1993 deadline.

Based on the foregoing, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-5-