974 F.Supp. 1277 (1997)
Carol A. EASTERLY, Plaintiff,
v.
SMITHKLINE BEECHAM CORPORATION, Defendant.
No. 4:96CV0951 TCM.
United States District Court, E.D. Missouri, Eastern Division.
August 13, 1997.
*1278 Francis E. Pennington, III, Dankenbring and Greiman, Clayton, MO, for Plaintiff.
Alene V. Haskell, Gaynell Gallagher, Husch and Eppenberger, St.Louis, MO, for Defendant.

MEMORANDUM AND ORDER
MUMMERT, United States Magistrate Judge.
Carol A. Easterly ("Plaintiff") alleges in her pending amended complaint that she was discharged by her employer, SmithKline Beecham Corporation ("Defendant") because of a disability, in violation of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and in retaliation for filing a workers' compensation claim, in violation of Mo.Rev.Stat. § 287.780. Defendant moves for summary judgment, arguing that Plaintiff's claims are barred, as a matter of law, by her representations that she is disabled and unable to perform her former job duties. [Doc. 25] For the reasons set forth below, the Court[1] will deny the motion.

I. BACKGROUND
The facts relevant to a resolution of the pending motion are undisputed.
Plaintiff began working for Defendant in 1987 as a packaging operator. (Pl.'s Dep. at 44; Am. Compl. at ¶ 5.) In July 1993, she sustained an on-the-job injury to her back. (Pl.'s Dep. at 85; Am. Compl. at ¶ 6.) She underwent back surgery in August, and received workers' compensation benefits and short-term disability benefits while recuperating. (Pl.'s Ex. "H"; Pl.'s Dep. at 80; Pl.'s Aff. at ¶ 3.)
In October, Dr. John Krettek, Plaintiff's surgeon, told Plaintiff that he would probably release her to return to light-duty work after December 13 and that he would probably restrict her to lifting no more than 15 pounds for three to four weeks after her return. (Pl.'s Aff. at ¶ 4.) Plaintiff telephoned Defendant's occupational health nurse, G. Joann Aldridge, on November 1 and told her of Dr. Krettek's predictions and of Plaintiff's intent to return to work as soon as Dr. Krettek released her. (Aldridge Dep. at 41-44; Pl.'s Aff. at ¶ 5.) Plaintiff again spoke with Ms. Aldridge in mid-November to tell her that she wanted to meet with her department heads and supervisor to discuss her return to work on a light-duty basis. (Aldridge Dep. at 48; Pl.'s Aff. at ¶ 6). Also in November or in early December, Plaintiff spoke with Steve Bishop, a manager for Defendant, to tell him of her plans to return to work. (Pl.'s Aff. at ¶ 7.)
Mr. Bishop and Ms. Aldridge telephoned Plaintiff on December 9 to tell her that they were concerned about her return to work with the light-duty restrictions because of the potential liability of Defendant should she reinjure her back and that they did not want her to return to work until she could lift at least 30 pounds. (Id. at ¶ 8; Pl.'s Dep. at 109-110.) Ms. Aldridge suggested a work-hardening/physical therapy program. (Pl.'s Dep. at 96-97; Aff. at ¶ 9.)
Ms. Aldridge wrote Plaintiff on December 14, telling her that her short-term disability benefits would end on January 18, 1994. (Pl.'s Ex. "A".) Ms. Aldridge advised Plaintiff, "We do not anticipate that you will need the Long Term Disability and will be back to work sometime in early 1994, however[,] you will need to file the claim to maintain your medical coverage...." (Id.) Plaintiff was further advised that Defendant's long-term disability plan "worked in conjunction" with workers' compensation benefits and Social Security benefits and that she might then "want to contact the local Social Security Office and go over what steps are necessary for you to apply for that benefit." (Id.) Ms. Aldridge testified in her deposition that she thought that Plaintiff intended to return to work for Defendant when she wrote the December 14 letter. (Aldridge Dep. at 52, 76, 80, 90.) Although aware that an employee was terminated when his or her long-term disability benefits began, Ms. Aldridge did not "think of that" when she advised Plaintiff to complete the long-term disability application form. (Id. at 81-82.) Nor did anyone *1279 tell Plaintiff that she would be terminated if she applied for and received long-term disability benefits from Defendant. (Pl's Aff. at ¶ 10.)
Ms. Aldridge included with her letter several forms, including a claim form for longterm disability benefits. (Pl's Ex. "A ".) Plaintiff completed and submitted this form on December 16. (Pl.'s Aff. at ¶ 10; Def's Ex. 1.) On that portion of the form inquiring "[h]ow do your limitations and symptoms prevent you from performing your usual duties?" Plaintiff answered, "[n]ot able to preform [sic] job." (Def's Ex. 1.) Plaintiff attached to the form, as required, the statement of her attending physician, Dr. Krettek. (Pl.'s Ex. "F".) Dr. Krettek noted that Plaintiff was currently receiving physical therapy and opined that she could not currently perform any work duties but she could return to work in six weeks. (Id.) He concluded that the maximum recovery for Plaintiff was expected in February 1993.[2] (Id.)
As suggested, Plaintiff enrolled in Defendant's work-hardening program and completed the program on February 10, 1994. (Pl.'s Dep. at 128; Pl.'s Aff. at ¶ 12.) Dr. Krettek then released Plaintiff to return to work with the following restrictions: (1) no lifting over 35 pounds; (2) no work above the shoulder level; (3) no lifting from a bent-over position; and (4) no lifting while twisting. (Pl.'s Ex. "B ".) Plaintiff told Mr. Bishop on February 15 that she could return to work subject to Dr. Krettek's restrictions. (Pl.'s Aff. at 13.) Dr. Krettek later wrote to Defendant's longterm disability insurance carrier and told the carrier that Plaintiff was released to return to work on February 15 subject to his restrictions. (Pl.'s Ex. "H ".)
Plaintiff received no response from Defendant. (Pl.'s Aff. at ¶ 14.) On March 8, Plaintiff was told by a co-worker that Defendant posted a notice stating that anyone who applied for and received long-term disability benefits would be deemed terminated and would be required to reapply for employment with Defendant. (Id.; Pl.'s Dep. at 121.) On that same date, Plaintiff received a telephone call from Nancy Kroc, Defendant's Human Resource Director, informing her that her employment with Defendant was terminated because she filed the long-term disability claim. (Pl.'s Dep. at 119; Pl.'s Aff. at ¶ 15.)
Prudential Insurance Company of America ("Prudential"), Defendant's long-term disability insurance carrier, wrote Plaintiff on April 14 that she had been approved for long-term disability benefits, retroactive to January 20, 1994. (Pl.'s Ex. "C".) The letter provided, in part:
In order to be eligible for the initial 24 months of benefits, you must be completely unable to perform the duties of your occupation with SmithKline Beecham Clinical Laboratories. In order to be eligible for benefits after that time, you must be unable to perform the duties of any occupation for which you are reasonable [sic] suited by education, training, and experience. (Id.)
The benefits plan provided, again in part, that long-term disability benefits ended upon recovery from disability. (Pl.'s Ex. "E" at 1.)
In May, Plaintiff received a letter from Joyce Hrynewich, Defendant's Benefits Supervisor, informing Plaintiff that her employment with Defendant was terminated. (Pl.'s Ex. "D ".) Plaintiff attempted, through her attorney, to resume her employment with Defendant until late September 1994. (Pl.'s Ex. "I," "J," and "K".) In hopes of returning to work for Defendant, Plaintiff did not cash any of the disability checks she received from Prudential until the Fall of 1994. (Pl.'s Aff. at 17.)
On September 9, Plaintiff applied for Social Security benefits. (Def.'s Ex. 2.) She averred that, "I became unable to work because of my disabling condition on July 13, 1993. I am still disabled." (Id.) When requesting reconsideration of the decision denying her benefits, Plaintiff wrote on December 16 that "I am totally disabled and I have medical evidence to support my claim." (Def's Ex. 4.)

II. DISCUSSION
Defendant argues that summary judgment is mandated in this case by Plaintiff's three representations  one on the long-term disability claim form, one on her application form for Social Security benefits, and one on *1280 her request for reconsideration  that she is unable to work because of a disability and by her receipt for the previous two years of long-term disability benefits.
Rule 56(c) of the Federal Rules of Civil Procedure mandates the entry of summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). An issue of material fact is genuine if it has a real basis in the record; and, a genuine issue of fact is material if it "might affect the outcome of the suit under the governing law." Hartnagel v. Norman, 953 F.2d 394, 395 (8th Cir.1992) (citations omitted).
The initial burden is on the moving party to clearly establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. See City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc. 838 F.2d 268, 273 (8th Cir.1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986). Instead, the non-moving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986). All disputed facts are to be resolved, and all inferences are to be drawn, in favor of the non-moving party. See Kopp v. Samaritan Health System, Inc., 13 F.3d 264, 269 (8th Cir.1993).
Summary judgment should seldom be used, however, in cases alleging employment discrimination. See Chock v. Northwest Airlines, Inc., 113 F.3d 861, 863 (8th Cir.1997); Hardin v. Hussmann Corp., 45 F.3d 262, 264 (8th Cir.1995); Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir.1994). Summary judgment is appropriate in employment discrimination cases, however, when a plaintiff fails to establish a factual dispute on an essential element of his or her case, see Helfter v. United Parcel Service, Inc., 115 F.3d 613, 615 (8th Cir.1997), or when a plaintiff fails to present a prima facie case, see Miners v. Cargill Communications. Inc., 113 F.3d 820, 823 (8th Cir.1997). Summary judgment is not appropriate unless all the evidence points one way and is susceptible of no reasonable inferences sustaining the position of the non-moving party. See Hardin, 45 F.3d at 262; Crawford, 37 F.3d at 1341; Johnson v. Minnesota Historical Society, 931 F.2d 1239, 1241 (8th Cir.1991) (citing Holley v. Sanyo Mfg., Inc., 771 F.2d 1161, 1164 (8th Cir.1985)).
A. Americans with Disabilities Act. To establish a prima facie case under the ADA, Plaintiff must demonstrate that: (1) she is a disabled person under the ADA; (2) she is qualified to perform the essential functions of the job with or without reasonable accommodations; and (3) she has suffered an adverse employment action. See Miners, 113 F.3d at 823; Aucutt v. Six Flags Over Mid-America, Inc., 85 F.3d 1311, 1318 (8th Cir.1996). "[A] growing body of authority has emerged which holds that an individual, who has maintained that he is totally disabled and, therefore, is unable to work, cannot satisfy the second element of the ADA prima facie case, namely that he is `a qualified individual with a disability.'" Johnson v. U.S. Steel Corp., 943 F.Supp. 1108, 1114 (D.Minn.1996). Thus, "Courts have found that repeated assertions of disability, and of a claimant's inability to work, effectively estop that claimant from maintaining that he is a `qualified individual with a disability.'" Id. The Eighth Circuit Court of Appeals has so found in the case of Budd v. ADT Sec. Systems. Inc., 103 F.3d 699, 700 (8th Cir.1996) (per curiam). In Budd, the plaintiff charged his former employer with violating the ADA by refusing to allow him to return to his former job as a system-service technician installing alarm systems. Id. The employer was granted summary judgment on the grounds that the plaintiff was estopped[3] from claiming he *1281 could do his former job with reasonable accommodation by (i) his representations on his applications for social-security and disability-insurance benefits that he was not able to return to his former job and (ii) his continued drawing of those benefits. Id. The Court affirmed on those grounds, noting that plaintiff's representations were "clearly at odds with the theory of his lawsuit," and additionally noting that it was clear on the record that plaintiff was not able to perform his former work and that it was also instructive that he rejected other job offers by his former employer. Id.
Similarly, the Third Circuit Court of Appeals found in McNemar v. Disney Store, Inc., 91 F.3d 610 (3rd Cir.1996), cert. denied ___ U.S. ___, 117 S.Ct. 958, 136 L.Ed.2d 845 (1997), that an HIV-positive plaintiff who sued his former employer for, among other things, allegedly discharging him in violation of the ADA was judicially estopped from asserting that claim by his sworn representations, confirmed by his doctors, in his applications for social-security and state disability benefits and for exemption from repayment of a student loan that he became unable to perform the duties of his job at least five weeks before his discharge. Id. at 615-16. Beginning its inquiry with the observation that "application of the doctrine of judicial estoppel is always factually driven," id. at 613, the Court held that the doctrine is invoked in its discretion "(1) to preserve the integrity of the judicial system by preventing parties from playing fast and loose with the courts in assuming inconsistent positions, and (2) with a recognition that each case must be decided upon its own particular facts and circumstances." Id. at 617. Moreover, the application of the doctrine must satisfy a threshold inquiry whether the employee's present position is inconsistent with the position formerly asserted, and, if so, was it asserted in bad faith, "i.e. `with an intent to play fast and loose' with the Court?"' Id. at 618 (quoting Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 361 (3rd Cir.1996)).
With the foregoing standards in mind, the Court will first examine the factual underpinnings of Defendant's claim that Plaintiff made three statements claiming a permanent disability that prevented her from performing her former job. These statements by Plaintiff can be divided into two separate events: (1) her application for long-term disability benefits and (2) her application for Social Security disability benefits.
Long Term Disability Claim. The evidence is clear that Defendant's agent advised Plaintiff that her health insurance would terminate unless she completed and filed a long-term disability claim form. In answer to a question on the form about her limitations, Plaintiff stated that she was unable to perform her job. The claim form was accompanied by an attending physician's report completed by Dr. Krettek in which Dr. Krettek advised Defendant that Plaintiff could return to work within six weeks. (Pl.'s Ex. "F ".)
Plaintiff was never told, nor was she aware, that her employment with Defendant would cease if she filed a completed longterm disability claim form. Indeed, Plaintiff and Defendant anticipated Plaintiff's return to work in early 1994. Plaintiff was consistent and persistent in her efforts to return to work for Defendant after she was released by her physician. Also, Plaintiff intended to return to work and kept Defendant advised of her progress, desires, and intentions.
Defendant now argues, however, that Plaintiff's statement on the claim form that she was disabled and could not return to her former job foreclose her present ADA and state-law retaliation claims.
The Court disagrees. The Court finds, for purposes of the instant motion, that Plaintiff completed the long-term disability form as a condition precedent to maintaining a good relationship with Defendant and not with the intent to collect long-term disability benefits. This position is evidenced by the undisputed discussions between Plaintiff and Ms. Aldridge about Plaintiff's return to work and *1282 her reluctance to apply for long-term disability benefits. The Court also notes that Plaintiff did not cash the checks issued on those benefits for several months after she began receiving them and that on December 10, 1994, Dr. Krettek released Plaintiff to return to work, with some limitations. (See Pl.'s Ex. "B".) Thus, when Plaintiff signed the disability form she had not yet been released for work.
Viewing this case through the lens of McNemar's threshold inquiry, the Court finds that, at the least, Plaintiff did not act in "bad faith" with her assertion of disability on the claim form. On the contrary, albeit Plaintiff choose her own words, she was directed to complete the form by her employer. Plaintiff clearly did not wish to collect or apply for long-term disability and clearly did wish to return to work.
The Court also finds Defendant's reliance on the district court's opinion in Budd v. ADT Security Systems. Inc., 94-1070-CV-W2 (W.D.Mo. Mar. 12, 1995) (Def's Ex. 6), unavailing. The plaintiff in that case applied for social security benefits, workers' compensation, and for long-term disability benefits from his former employer on the grounds that he was totally disabled as a result of an accident. Id. slip op. at 2. The latter included a confirming statement by his treating physician. Id. at 2-3. One year later, a physician retained by the employer's workers' compensation carrier concluded that there were jobs that plaintiff could perform with his physical limitations. Id. at 3. A few months later, the plaintiff discussed several job placements with the employer's human resources manager; the discussions were unsuccessful; the plaintiff sued. Id. at 3-4. In finding the plaintiff's claims judicially estopped, the district court emphasized that the plaintiff's former employer relied on his representations of disability when deciding not to assign plaintiff to his former job. Id. at 15. See also August v. Offices Unlimited, Inc., 981 F.2d 576, 579, 582 (1st Cir.1992) (finding no indication in record that employee was capable of returning to work after his initial disability in case in which employee's treating physician verified that the employee was totally disabled and it was unknown whether he could return to work and employee's attorney informed the employer that he (the attorney) could not predict when his client could return to work although his client did intend to return). There was no such reliance in the instant case. Plaintiff was, as Defendant apparently knew, ready to return to work when released by her doctor. Plaintiff, however, relied on Defendant's agent's instructions.[4]
The Court finds, in its discretion, that the application of judicial estoppel is inappropriate as to Plaintiff's long-term disability claim form.
Social Security Application. Plaintiff applied for Social Security benefits in September 1994, signing a form stating that she was unable to work because of a disability with an onset date of July 13, 1993. Her application was denied. On December 16, she requested reconsideration, stating "I am totally disabled and have medical evidence to support my claim." By this time, Plaintiff was collecting and cashing her long-term disability checks and no longer negotiating with Defendant for a return to work. The request for reconsideration form was prepared by her counsel and signed by Plaintiff.
Defendant contends that Plaintiffs averments of disability on the original application and on the request for reconsideration estop her present claims. Plaintiff counters that Defendant's long-term disability plan requires the filing of a Social Security claim and Defendant does not contest that issue.
*1283 If Plaintiff's statements on the Social Security form and request were viewed in isolation, Defendant's estoppel argument would be more persuasive. Viewed in context, however, the statements are not so defeating.
From December 1993 to September 1994, Plaintiff continued to inform Defendant that she was interested in and capable of returning to work for Defendant. When Plaintiff first applied for long-term disability benefits it was at her employer's direction, and her employer was aware, and anticipated, that she would return to work in early 1994. Moreover, even after Plaintiff learned that she was terminated due to the filing of her long-term disability claim, she continued to assert the position that she was capable of returning to work. These efforts continued through negotiations between Plaintiff's worker's compensation attorney and Defendant's attorneys. (Pl.'s Ex. "I", "J", and "K".) Plaintiff's physician informed Defendant on February 10, 1994, that Plaintiff was released and capable of returning to work in a limited capacity and, by letter of March 15, so informed the long-term disability insurance carrier. Thereafter, Plaintiff applied for Social Security benefits and made the inconsistent representations now at issue.
The Court finds that because of the circumstances surrounding Plaintiff's applications for long-term disability and Social Security benefits, a factual dispute exists as to Plaintiff's admissions regarding her disability.
In so finding, the Court takes note of an Equal Employment Opportunity Commission Enforcement Guideline recently cited by the District of Columbia Circuit Court of Appeals in Swanks v. Washington Metropolitan Area Transit Authority, 116 F.3d 582 (D.C.Cir. 1997). The Guideline provides that "representations made in connection with an application for disability benefits ... are never an absolute bar to a finding that a person is a `qualified individual with a disability' for purposes of the ADA." Id. at 586 (quoting EEOC Enforcement Guidance On The Effect Of Representations Made In Applications For Benefits On the Determination Of Whether A Person Is A "Qualified Individual With a Disability" under the Americans With Disabilities Act of 1990 at 3 (Feb. 12, 1997)) (omissions in original). In Swanks, the Court held that an employee's receipt of Social Security disability benefits did not preclude the employee from bringing an ADA claim. Id. (citing Robinson v. Neodata Services, Inc., 94 F.3d 499, 502 n. 2 (8th Cir.1996)). The Court further held that forcing claimants to choose between ADA rights and a Social Security claim would "force disabled individuals into a `untenable' choice between receiving immediate subsistence benefits under the Social Security Act or pursuing discrimination remedies." Id. The Court, however, went on to explain that this did not mean that a Social Security claimant's statements or admissions were never relevant in an ADA claim. Id. at 587. "For example, ADA plaintiffs who in support of claims for disability benefits tell the Social Security Administration they cannot perform the essential functions of a job even with accommodation could well be barred from asserting, for ADA purposes, that accommodation would have allowed them to perform that same job." Id.
For the reasons set forth above, the Court finds, in the unique circumstances of this case, that Plaintiff is not estopped from asserting her ADA claims by her statements on either the Social Security forms or on the long-term disability benefits claim form. Defendant's motion for summary judgment on the ADA claim will be denied.
B. Workers' Compensation Retaliation. Plaintiff alleges in her second count that Defendant terminated her because she exercised her rights under the Missouri Workers' Compensation statutes. Defendant argues that it is entitled to summary judgment on this claim on the basis of the same equitable estoppel argument discussed above.
Defendant correctly notes that Missouri law requires that a workers' compensation retaliation claim must allege and prove that the employee was willing and able to perform the duties required by her job. The Court, however, finds that there is a disputed issue of material fact as discussed in section "A", supra. Thus, Defendant's motion for summary judgment on count two will also be denied.
Accordingly,
*1284 IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment is DENIED. [Doc. 25]
NOTES
[1] The undersigned United States Magistrate Judge is entering a final disposition in this case with the written consent of the parties. See 28 U.S.C. § 636(c).
[2] This date should read "February 1994."
[3] As noted by the Eighth Circuit Court of Appeals in Maitland v. University of Minnesota, 43 F.3d 357, 363(8th Cir.1994), "[t]here are a number of different types of estoppel doctrines: estoppel by record, estoppel by deed, collateral estoppel, estoppel in pais (equitable estoppel), promissory estoppel, and judicial estoppel." The estoppel doctrines that are arguably applicable to the instant case require that the party to be estopped "must have asserted a fact or claim, or made a promise, that another party relied on, that a court relied on, or that a court adjudicated." Id. at 364. "[E]stoppel is an equitable doctrine, and it should not be given effect beyond what is necessary to accomplish justice between the parties." Id. (citing Dickerson v. Colgrove, 100 U.S. 578, 580-581, 25 L.Ed. 618 (1879)).
[4] Defendant also relies on the Eighth Circuit's holding in Beauford v. Father Flanagan's Boys' Home, 831 F.2d 768 (8th Cir.1987), that the benefits of the Rehabilitation Act, 29 U.S.C. § 794, were only protected as long as the employee was able to perform her job. Id. at 770. In that case, the employee told her employer that she was unable to return to work because of mental and physical problems and "she would be unable to work in the foreseeable future." Id. The Court found that the employee, who remained as an unsalaried employee, could not receive benefits under the Act because she admitted that she could not, and did not anticipate being able to, perform her job. Id. at 770-71. The employee's position was unchanged. In the instant case, however, Plaintiff maintains that there was a time when she could perform her job, but was not allowed to by Defendant. The two cases are distinguishable.